**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35826**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Opinion No. 18** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 16, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ISAAC JAMES CANTRELL,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order of the district court denying motion to suppress, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

GRATTON, Judge

Isaac James Cantrell appeals from his judgment of conviction entered upon a jury verdict finding him guilty of trafficking in marijuana, Idaho Code § 37-2732B(a)(1). Specifically, Cantrell challenges the district court's denial of his motion to suppress evidence obtained from a search of his vehicle. We affirm.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

Officer Eric Johnson stopped Cantrell after observing him drive the wrong way on Main Street and then again on 12th Street, both one-way streets, in Boise. Officer Tony White, who is a member of the Boise STEP program, a specialized task force which evaluates drivers who are suspected of being under the influence of alcohol or drugs, heard Officer Johnson call out the stop over the radio and believed that he might need some assistance. Officer White arrived approximately one minute after the stop and observed Cantrell's vehicle as well as Officer

1

Johnson's patrol car both parked facing the wrong way on 12th Street. Officer Johnson indicated that the driver might be under the influence of alcohol, and Officer White initiated an investigation.

Officer White testified that he asked Cantrell to exit the vehicle and inquired about where he was coming from and where he was going, to which Cantrell responded that he was coming from downtown. When asked whether he had been drinking, Cantrell responded that he had four beers but was unable to tell Officer White where he had been drinking or where he was going. Cantrell's eyes were bloodshot and glossy, and his speech was "thick." He struggled with the divided attention tests as he was having trouble processing simple instructions. Officer White performed the Horizontal Gaze Nystagmus (HGN) test, which Cantrell failed. While performing the test, Cantrell commented that he knew "where this was going to lead" and ultimately refused to comply with any other field sobriety tests. Officer White determined that based upon Cantrell's driving pattern, his admission of consuming alcohol, and his failure of the HGN test, he would place Cantrell under arrest for driving under the influence.

After Cantrell was placed under arrest and secured inside a patrol car, Officer White asked Officer Johnson to call a tow truck to impound the vehicle. Officer White then conducted a search incident to Cantrell's arrest for DUI. He testified that as part of the investigation he would look in the vehicle for any open containers or other signs of alcohol use. Officer White began his search at the driver's seat where he located a Tupperware container underneath the seat. Inside the Tupperware container were four individually-wrapped sandwich bags which contained a green leafy substance later identified as marijuana. Upon discovering the marijuana, Officer White went back and read Cantrell his *Miranda* rights. When asked whether he understood, Cantrell stated "yes." Officer White then proceeded to ask several questions which resulted in Cantrell admitting that he had a bong, which was located in the trunk. Cantrell also admitted ownership of the Tupperware container with the marijuana inside. Officer White proceeded to open the trunk and immediately smelled a strong odor of marijuana. Inside the trunk was a large, green duffel bag, and inside the bag Officer White located a large quantity of marijuana. He also located paraphernalia.

Cantrell was ultimately charged with trafficking in marijuana and driving under the influence. Cantrell filed a motion to suppress all of the evidence obtained from the search of his vehicle as well as his statements to Officer White. The district court denied the motion to

suppress, specifically finding probable cause for the stop, probable cause for the DUI arrest, a proper search of the vehicle conducted incident to the arrest, a voluntary waiver of *Miranda* rights, and a proper inventory search.[1] Cantrell was convicted on both counts, and the district court sentenced Cantrell to one year determinate on the trafficking count and two years probation on the DUI. Cantrell appeals.

## II.

## ANALYSIS

The district court, relying on *New York v. Belton*, 453 U.S. 454 (1981), determined that Officer White could search the vehicle incident to Cantrell's arrest and, therefore, there was no basis for suppression of the marijuana discovered as a result of the search. The district court also determined that even if a search incident to arrest was not permissible, because the vehicle was searched as part of the impounding process, the discovery of the additional marijuana in the trunk was inevitable. Cantrell argues that the warrantless search of his vehicle incident to his arrest was invalid under the recent United States Supreme Court case, *Arizona v. Gant*, _, U.S. _, 129 S.Ct. 1710 (2009). He also contends that because the State failed to offer evidence that the impoundment of his vehicle was reasonable, the State failed to prove that the marijuana would have inevitably been discovered.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]    Cantrell does not challenge all of the district court's findings on appeal. Because we have determined the search incident to arrest issue to be dispositive, we will not address the district court's other findings.

3

**A.      Search Incident to Arrest**

**1.      Background**

We begin our analysis with a brief review of the evolution of the search incident to arrest exception to the warrant requirement.  In *Chimel v. California*, 395 U.S. 752, 753 (1969), police arrested Chimel pursuant to an arrest warrant for burglary.  While the police did not have a warrant to search Chimel's residence, they conducted a search of several rooms in the house and discovered evidence supporting the burglary prosecution.  *Id.* at 753-54.  The Court, ultimately concluding that the search was unreasonable, held that police may conduct a warrantless search incident to a lawful arrest for the purposes of preservation of evidence and officer safety.  *Id.* at 762-63.  The Court concluded that there was "ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'--construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  *Id.*

In *Belton*, the Supreme Court applied *Chimel* in the automobile context.  In that case, an officer overtook a speeding vehicle on the New York Thruway and ordered the driver to pull over.  The officer smelled burnt marijuana, saw an envelope on the floor of the car marked "Supergold" that he associated with marijuana, and placed the occupants under arrest for unlawful possession.  He searched the individuals and then proceeded to search the passenger compartment of the vehicle.  Located on the backseat was a leather jacket in which the officer discovered cocaine in one of the zippered pockets.  Recognizing that *Chimel* authorized, incident to a lawful custodial arrest, warrantless searches of the person arrested and of the immediately surrounding area, the *Belton* Court concluded that "no straightforward rule" had emerged from lower courts' application of *Chimel* regarding the "proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants."  *Belton*, 453 U.S. at 457-59.  The Court reasoned that "[w]hen a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority."  *Id.* at 459-60.  In order to establish a "workable rule," the Court determined that the passenger compartment of an automobile is "generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'"  *Id.* at 460 (quoting *Chimel*, 395 U.S. at 763).  Thus, the Court held that "when a policeman has made a lawful custodial arrest of the

4

occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.*

Responding to the "chorus" that had called for the Supreme Court to revisit *Belton*, the Court in *Gant*, rejected a broad reading of *Belton* that would "authoriz[e] a vehicle search incident to every recent occupant's arrest." *Gant*, _ U.S. at _, 129 S.Ct. at 1716-19. In *Gant*, two officers, responding to an anonymous tip that a residence was being used to sell drugs, knocked on the front door and asked to speak to the owner. Gant answered the door, identified himself, and told the officers that the owner would be home later. The officers left the residence, conducted a records check on Gant, and discovered that there was an outstanding warrant for his arrest for driving with a suspended license. The officers went back to the house later that evening and, after a third officer arrived, they arrested two individuals and placed them in separate patrol cars. When Gant drove into the driveway, the officers recognized his car and confirmed that Gant was the driver by shining a flashlight into the car. Gant parked the car, got out, and shut the door. One of the officers called to Gant, and when they approached each other, the officer immediately arrested Gant and handcuffed him. Because the two prior arrestees were in the only patrol cars on the scene, the officer called for backup. When two more officers arrived, they placed Gant in the backseat of their vehicle. Two officers then searched Gant's vehicle, discovering a gun and a bag of cocaine in the pocket of a jacket on the backseat.

The Court began its analysis by announcing that warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *Gant*, _ U.S. at _, 129 S.Ct. at 1716. The Court then acknowledged the search incident to arrest exception and stated: "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* The Court continued:

> In *Chimel*, we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'--construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.

*Gant*, _ U.S. at _, 129 S.Ct. at 1716 (internal citations omitted). The Court acknowledged that *Belton* had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at 1718. The Court rejected this broad reading of *Belton*, however, because it would "untether the rule from the justifications underlying the *Chimel* exception--a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.'"[2] *Id.* at 1719. Thus, the *Gant* Court held that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."[3] *Id.*

Immediately following this holding, the Court stated: "Although it does not follow from *Chimel*, we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). This exception is separate and distinct from the "reaching distance" exception announced in *Chimel*. The genesis of this exception appears to be Justice Scalia's concurring opinion in *Thornton*.

The Supreme Court had, just five years earlier in *Thornton*, reaffirmed the basic holding in *Belton*. The Court had twice granted certiorari to determine whether or not *Belton*'s rule was limited to circumstances where the officer makes contact with the occupant while the occupant is inside the vehicle, but the Court did not reach the merits of those cases. *Thornton*, 541 U.S. at 617. In *Thornton*, the Court determined that "*Belton* governs even when an officer does not

---

[2]    *But see Belton*, 453 U.S. at 463-64 (Brennan, J., dissenting) (asserting that the *Belton* decision "turns its back on the product of [*Chimel*'s] analysis, formulating an arbitrary "bright-line" rule applicable to "recent" occupants of automobiles that fails to reflect *Chimel*'s underlying policy justifications.").

[3]    The Court recognized that "[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Gant*, 129 S.Ct. at 1719, n.4. Indeed, if, as the *Gant* dissent avers, the prevailing practice is for officers to handcuff the arrestee and remove him to a secure place before conducting a search, *Gant*, 129 S.Ct. at 1730 (Alito, J., dissenting), then application of the *Chimel* reaching-distance rule in the automobile context would certainly be rare, if not virtually non-existent.

make contact until the person arrested has left the vehicle." *Id.* Reaffirming the "generalization which *Belton* enunciated" regarding "[t]he need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment," the Court concluded that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." *Id.* at 622-23.

Justice Scalia's concurring opinion in *Thornton* severely criticized the majority's reliance on officer safety and preservation of evidence as justifications for a search when the arrestee is handcuffed and secured in a patrol car. *Id.* at 625-29 (Scalia, J., concurring in judgment). The concurrence assailed the theoretical underpinnings of *Belton* and asserted that "[i]f *Belton* searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." *Id.* Justice Scalia stated:

> There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested. The fact of prior lawful arrest distinguishes the arrestee from society at large, and distinguishes a search for evidence of *his* crime from general rummaging. Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended.

*Id.* at 630 (emphasis in original). Therefore, Justice Scalia concluded that *Belton* searches should be limited "to cases where it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 632.

The *Gant* Court appears to have accepted Justice Scalia's conclusion, ultimately adopting a two-prong holding:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Gant*, _ U.S. at _, 129 S.Ct. at 1723-24. In applying its holding, the Court determined, as to the first prong, that because Gant had been handcuffed and secured in a patrol car prior to the search, he clearly was not within reaching distance of his car at the time of the search. *Id.* at 1719. The Court also concluded under the second prong that because Gant was arrested for driving with a

suspended license, "an offense for which police could not expect to find evidence in the passenger compartment," the officers could not have reasonably believed that they would find evidence of the offense for which Gant was arrested. *Id.*

## 2. Application of *Gant*

Cantrell contends that neither of the *Gant* prongs is applicable, rendering the warrantless search impermissible under the search incident to arrest exception. Here, Cantrell was arrested for DUI, placed in handcuffs, and secured in the back of a patrol car prior to Officer White's search of the vehicle. Because Cantrell, like Gant, was clearly not within reaching distance of the car at the time of the search, the *Chimel* justifications, officer safety and preservation of evidence, were not present and the warrantless search was not permissible under that prong of *Gant*.

The State contends, however, that the warrantless search was justified because it was reasonable to believe that the vehicle contained evidence associated with a DUI. As noted, the *Gant* Court concluded that police may search a vehicle incident to a recent occupant's lawful arrest "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, _ U.S. at _, 129 S.Ct. at 1719 (quoting *Thornton*, 541 U.S. at 632 (Scalia, J., concurring in judgment)). Cantrell contends that the "reasonable to believe" standard equates to the probable cause standard. We disagree.

The United States Supreme Court is certainly aware of the meaning attached to particular standards. Had the Court intended to adopt the probable cause standard, it would have done so. Moreover, the *Gant* Court recognized that there are "[o]ther established exceptions to the warrant requirement," specifically noting that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-821, 102 S.Ct 2157, 72 L.Ed. 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found." *Gant*, _ U.S. at _, 129 S.Ct. at 1721. Thus, it is clear that the Court viewed the probable cause exception as distinct from the "reasonable to believe" standard.[4]

---

[4] *But see United States v. Grote*, 629 F. Supp. 2d 1201, 1203 (E.D.Wash. 2009) (equating the "reasonable to believe" standard announced in *Gant* to a probable cause standard based upon Ninth Circuit case law).

Rather, upon announcing the "reasonable to believe" standard, the Court explained:

> In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. See, *e.g., Atwater v. Lago Vista*, 532 U.S. 318, 324, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Gant*, _ U.S. at _, 129 S.Ct. at 1719. In citing *Atwater* (failure to wear seatbelt) and *Knowles* (speeding), the Court highlighted examples of cases involving "offense[s] for which police could not expect to find evidence." *Gant*, _ U.S. at _, 129 S.Ct. at 1719 (holding that driving with a suspended license is also such an offense). The Court then cited *Belton* and *Thornton* (both drug offenses), which involved offenses for which police *could* expect to find evidence, as circumstances where the offense of arrest supplies the basis for the search. In the search for evidence relevant to the crime of arrest situation, Justice Scalia's concurrence in *Thornton* suggests that "[t]here is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested." *Thornton*, 541 U.S. at 630 (Scalia, J., concurring in result). Justice Scalia further explained in his concurrence in *Gant* that "a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made." *Gant*, _U.S. at _, 129 S.Ct. at 1725 (Scalia, J., concurring). We conclude, therefore, that because "the offense of arrest [DUI] will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein," and because a DUI is "an offense for which police could . . . expect to find evidence in the passenger compartment," *Gant*, _ U.S. at _, 129 S.Ct. at 1719, the search of Cantrell's vehicle was reasonable.

The district court found that Officer White was justified in placing Cantrell under arrest for DUI, based upon the facts and circumstances as well as the officer's extensive experience and training, and Cantrell does not challenge the court's findings or its conclusion. Cantrell does contend, however, that because evidence of his DUI would only be contained in his body and because he claimed to have consumed alcohol only hours before driving, a search of his vehicle for evidence of DUI would be unreasonable. Cantrell argues that it is not reasonable to believe that evidence of the offense of arrest, DUI, might be found in the vehicle based solely upon evidence of intoxication. He argues that the officers must possess some additional information

9

suggesting that evidence related to a DUI might be found in the vehicle. Based upon this reasoning, DUI evidence that is in plain view, or partially hidden, but visible to the officers, would supply a basis for the search, whereas evidence that is carefully hidden would not. Such an inquiry would turn on a perpetrator's ability to hide evidence. This type of analysis resonates more with the plain view exception. This is not, however, what the search incident to arrest exception contemplates or what *Gant* requires. Rather, "the offense of arrest will supply a basis" for the search. *Gant*, _U.S. at _, 129 S.Ct. at 1719. A search for this purpose is authorized irrespective of whether evidence is known to be located in the vehicle. *See Gant*, _ U.S. at _, 129 S.Ct. at 1719 (search justified "when it is reasonable to believe evidence relevant to the crime of arrest *might* be found in the vehicle") (emphasis added) (internal quotation and citation omitted).

The Florida Court of Appeals arrived at a similar conclusion in *Brown v. State*, 24 So.3d 671 (Fla. Dist. Ct. App. 2009). In that case, the defendant was stopped because of outstanding warrants for theft. After identifying the defendant and confirming the warrants, Brown was arrested, handcuffed, and placed in the patrol car. The officer then looked into the car and noticed a lady's wallet immediately in his line of view on the driver's seat. He looked at the wallet and noted that it belonged to an elderly woman. He then proceeded to conduct a search of the vehicle discovering three more wallets. *Brown*, 24 So.3d at 674.

The court began with an analysis of *Chimel*, *Belton*, and *Thornton* in laying the framework for the *Gant* case. The court, relying upon Justice Scalia's concurring opinion in *Thornton*, ultimately concluded: "[T]he 'reasonable belief that evidence might be found' prong of *Gant* can be satisfied solely from the inference that might be drawn from the nature of the offense of arrest itself, and the assumption that evidence might be found at the place of arrest." *Brown*, 24 So.3d at 678. The court determined that Justice Scalia's concurrence provided discussion making clear that "the 'nature of the charge' is determinative of whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence." *Id.* (quoting *Thornton*, 541 U.S. at 630 (Scalia, J. concurring in judgment)). Thus, because the offense of arrest in *Brown* was theft, "an offense for which police could 'expect to find evidence,'" the court held that the search was "justified as an incident to the arrest for the purpose of 'gathering evidence' of the crime of theft." *Brown*, 24 So.3d at 677.

In this case, Cantrell was arrested for DUI, and the DUI supplied the basis for the search. *See Gant*, _ U.S. at _, 129 S.Ct. at 1719. It was reasonable to believe that evidence of the offense, e.g. alcohol containers or other evidence of alcohol use, "might be found in the vehicle."[5] *Gant*, _ U.S. at _, 129 S.Ct. at 1719 (quoting *Thornton*, 541 U.S. at 632 (Scalia, J., concurring in judgment)). Cantrell's admission with respect to consuming alcohol does not negate the fact that evidence of DUI "might be found in the vehicle," particularly in light of the fact that officers are not required to accept as true a defendant's version of the events. Moreover, Cantrell's contention that a search of his vehicle is unreasonable because evidence of his DUI would only be contained in his body ignores the realities of a DUI investigation. Indeed, as the State points out, "a DUI trial does not start and end with a breathalyzer report," considering the fact that the report may be suppressed in some instances. Officer White testified that after he placed Cantrell under arrest he intended to continue his DUI investigation, including looking in the vehicle for any open containers or other signs of alcohol use.[6] In addition to finding the Tupperware containing marijuana, Officer White also found a beer can. Officer White's search of the vehicle fit within the second prong of the search incident to arrest exception under *Gant*.[7] While the district court upheld the search based upon an interpretation of *Belton* that the United States Supreme Court later rejected, it correctly denied Cantrell's motion to suppress. Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984).

---

[5]     *See Cain v. State*, ___ S.W.3d ___ (Ark. App. 2010) (holding that where the officer smelled alcohol and suspected the defendant of DWI, performed field sobriety tests, and ultimately arrested the defendant on DWI, the subsequent search of the vehicle was permissible under *Gant* because an open container of alcohol could have been found in the vehicle).

[6]     *See United States v. Oliva*, C.R. No. C-09-341 (S.D. Tex. July 1, 2009) (distinguishing the arrest for a routine traffic violation in *Gant* from an arrest for DUI, particularly noting that the officer's testimony established that the search sought evidence related to the arrest for DUI and concluding that "[i]t would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers").

[7]     Due to our determination that the search of Cantrell's vehicle was reasonable, we need not address the State's argument with respect to the "good faith" exception or Cantrell's contention that the district court erred in applying the inevitable discovery doctrine pursuant to an inventory search.

### III.
### CONCLUSION

Because Cantrell was arrested for DUI, an offense for which it was reasonable to believe evidence of the offense might be found in the passenger compartment, the search of his vehicle was proper under the second prong of the search incident to arrest exception articulated in *Gant*. The district court was correct in denying Cantrell's motion to suppress and its order is, therefore, affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**