TORPY, J.
 

 Appellant was convicted of four counts of felony petit theft. Although Appellant raises two points on appeal, only one point merits discussion — whether the lower court erred when it denied his motion to suppress the fruits of a warrantless search of his automobile, which was conducted incident to his lawful arrest on outstanding warrants. We conclude that the search was lawful under the Supreme Court’s recent pronouncement in
 
 Arizona v. Gant,
 
 - U.S. -,-, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009), even though Appellant was not within reach of the vehicle at the time of the search. We also conclude, in the alternative, that the fruits of the search should not be excluded, even if the search was unlawful, because police relied in good faith upon the widely accepted interpretation of the law in effect at the time of the search.
 

 Corporal Venaziano of the Lake County Sheriff’s Office stopped Appellant’s vehicle because of outstanding warrants. After Venaziano identified Appellant and confirmed two outstanding warrants for theft, he took Appellant into custody, handcuffed him and placed him in the patrol car. Venaziano then “took an initial look in the car and [he] noticed on the front seat of the car was a lady’s wallet immediately in [his] line of view, which was on the driver’s seat.” He opened the wallet to see who it belonged to. The wallet did not belong to Appellant, but instead to an elderly woman. Thereafter, Venaziano conducted a search of the vehicle. During this search, he located three other wallets on the floor of the passenger’s side. These wallets also belonged to elderly women. Appellant told Venaziano that he found the wallets at a pharmacy and then later said that he found the wallets at a grocery store. He claimed that he was trying to find a place to turn them in. The jury concluded otherwise.
 

 The trial court denied Appellant’s motion to suppress, which he argued without benefit of counsel. Appellant claimed,
 
 inter alia,
 
 that police had no cause to search his vehicle because the vehicle had no connection to the crimes for which he was arrested. The trial court dismissed this argument, applying the then — prevailing interpretation of
 
 New York v. Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which held that, “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.”
 
 Id.
 
 at 460, 101 S.Ct. 2860. On review, Appellant challenges the trial court’s reliance upon
 
 Belton
 
 in light of
 
 Gant,
 
 which was decided after Appellant’s conviction. Specifically, Appellant challenges the applicability of the search incident to arrest exception because he was already shackled and locked in a police car at the time of the search, a fact not in dispute. To resolve this case, we must examine the parameters of the search incident to arrest exception in light of
 
 Gant.
 

 [1]
 

 We begin our analysis with a brief discussion of a trilogy of Supreme Court cases preceding
 
 Gant.
 
 The first is the
 
 *675
 
 seminal case of
 
 Chimel v. California,
 
 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). There, police arrested Chimel at his home pursuant to an arrest warrant for burglary. Even though police did not have a search warrant, they searched several rooms in Chimel’s house and discovered evidence to support the burglary prosecution. On review, the Court held that, although police may conduct a warrantless search incident to a lawful arrest to locate weapons or evidence of the crime, the search must be limited to the arrestee’s person and the area within the arrestee’s “immediate control.”
 
 Id.
 
 at 763, 89 S.Ct. 2034.
 

 Subsequent to
 
 Chimel,
 
 much debate ensued about how to determine the area within the “immediate control” of the ar-restee. The limits of this area, described by some commentators and courts as the
 
 “Chimel
 
 circle,” became particularly problematic in the context of vehicle searches, eventually leading the Court to address the issue in this specific context in
 
 Belton. Belton,
 
 453 U.S. at 459 n. 1, 101 S.Ct. 2860 (describing lower court decisions on this issue in “disarray”). There, Belton and three other men were stopped in a car by a New York state trooper. When the trooper approached the car, he smelled marijuana and noticed a suspicious envelope in the car. He ordered all the men from the car, separated them and then searched the car. During the search, he found drugs in the zippered pocket of Bel-ton’s jacket, which was on the back seat of the car. Belton argued that the search violated
 
 Chimel
 
 because the jacket was outside his immediate control at the time of the search.
 

 On review, the Court decided to address the validity of the search only under the search incident to arrest exception, without consideration of the automobile exception.
 
 Id.
 
 at 463, 101 S.Ct. 2860 (Rehnquist, J., concurring). It acknowledged that its holding in
 
 Chimel
 
 had created confusion and sought to construct a “single, familiar standard ... to guide police officers” in searches of this nature, while maintaining the constitutional principles enunciated in
 
 Chimel. Id.
 
 at 460 n. 3, 101 S.Ct. 2860. It concluded with a seemingly unequivocal statement of the law when applying
 
 Chimel
 
 in the “particular and problematic” context of vehicle searches. It held that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.”
 
 Id.
 
 at 460, 101 S.Ct. 2860. The Court also specified that the permissible scope of the search included containers, whether “open or closed,” including those which, by their very nature “could hold neither a weapon nor evidence.”
 
 Id.
 

 Belton
 
 resulted in considerable debate by academics and lower courts, sparked in part by the criticism of the dissenting judges who labeled its so-called “bright-line” rule arbitrary and without logical underpinning to the constitutional justification for these searches.
 
 Gant,
 
 129 S.Ct. at 1718.
 
 Belton
 
 also drew considerable criticism because it appeared to authorize a search even when the nature of the offense of arrest was such that no evidence might be found under any circumstances, such as the case when the offense of arrest involved a minor traffic violation.
 
 See
 
 Myron Moskovitz,
 
 A Rule in Search of a Reason: An Empirical Reexamination of
 
 Chimel
 
 and
 
 Belton, 2002 Wis. L.Rev. 657, 695 (2002);
 
 see also
 
 Jon F. Sheehan,
 
 State v. Pierce: State Constitutional Protection against the
 
 Belton
 
 Search Incident to Arrest Rule,
 
 30 New Eng. L.Rev. 843, 851-62 (1996). Despite this debate and criticism, the widely accepted interpretation of
 
 Bel-ton’s
 
 holding was quite literal. Courts upheld vehicle searches not only in situations
 
 *676
 
 like
 
 Belton,
 
 where the object of the search (but not the vehicle) was outside the reach of the arrestee, but also in situations where the arrestee had been secured prior to the search.
 
 Id.; see
 
 cases cited
 
 infra
 
 note 8. Courts also routinely approved searches incident to arrest for traffic violations.
 
 See, e.g., United States v. Caldwell,
 
 97 F.3d 1063, 1067 (8th Cir.1996) (involving search after arrest for driving with suspended license);
 
 United States v. Byrd,
 
 47 F.3d 1170, 1177, 1995 WL 72299 (6th Cir.1995) (upholding search incident to arrest for traffic violation);
 
 State v. Landry,
 
 543 So.2d 314 (Fla. 2d DCA 1989) (upholding search of vehicle and duffel bag after arrest for driving with suspended license);
 
 State v. Irvin,
 
 483 So.2d 461, 463 n. 3 (Fla. 5th DCA 1986) (holding initial stop for driving with suspended license validates search incident to arrest).
 

 Although
 
 Thornton v. United States,
 
 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), presented the Supreme Court with a case in which a
 
 Belton
 
 search had been conducted while the arrestee was handcuffed and in the back of the police car, the majority opinion did not specifically confront that issue. However, the concurring opinion of Justice Scalia did address the issue, and it is particularly instructive here because it was later adopted by the Court in
 
 Gant.
 
 Justice Scalia criticized the lack of historical and logical underpinning for a broad interpretation of
 
 Belton.
 
 According to Justice Scalia, a
 
 Belton
 
 search could only be justified to recover “evidence relevant to the crime for which [an arrestee] was arrested.”
 
 Id.
 
 at 629, 124 S.Ct. 2127 (Scalia, J., concurring). He noted that the historical authorization to search the place where an arrestee is arrested was not to prevent the arrestee from destroying evidence, but for the purpose of “gathering evidence relating to the crime of arrest.”
 
 Id.
 
 at 630, 124 S.Ct. 2127. He reasoned that police have “broader ... authority” over a lawfully arrested person and that evidence of the crime is “most likely to be found” at the place of arrest. He concluded:
 

 There is nothing irrational about broader police authority to search for evidence when and where the perpetrator of a crime is lawfully arrested. The fact of prior lawful arrest distinguishes the arrestee from society at large, and distinguishes a search for evidence of his crime from general rummaging. Moreover, it is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended.
 

 Id.
 
 (emphasis supplied). According to Justice Scalia, to justify a search under
 
 Bel-ton,
 
 the officer must consider the “nature of the charge” to determine if relevant evidence might be found in the vehicle.
 
 Id.
 
 at 632, 124 S.Ct. 2127.
 

 In
 
 Gant,
 
 the Supreme Court was presented with facts that advanced the criticisms of
 
 Belton’s
 
 bright-line rule to the forefront. Gant had been arrested for a traffic violation, handcuffed and secured in a police car before the search took place. Thus, the search could not be premised on the rationale that Gant might gain access to a weapon or destroy evidence. The Court held that the search incident to arrest was unlawful. It stated:
 

 Police may search a vehicle incident to a recent occupant’s arrest only if the ar-restee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search
 
 of an
 
 arres-tee’s vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.
 

 
 *677
 

 Gant,
 
 129 S.Ct. at 1723-24 (emphasis supplied). The first prong of the
 
 Gant
 
 holding, when the arrestee is within “reaching distance,” was based on the narrower interpretation of
 
 Belton
 
 by the Arizona Supreme Court, which had held that “when the passenger compartment is within an arrestee’s reaching distance,
 
 Belton
 
 supplies the generalization that the entire compartment and any containers therein may be reached.”
 
 Id.
 
 at 1718. The
 
 Gant
 
 Court accepted this interpretation. In other words, if the arrestee is still within reaching distance of the car at the time of the search, the permissible scope of the search includes the entire passenger compartment, including any containers therein. Here, as was the case in
 
 Gant,
 
 Appellant was handcuffed in the back of the police car at the time of the search, rendering the search impermissible under this prong of the
 
 Gant
 
 holding. But our conclusion on this point does not end our inquiry because
 
 Gant
 
 also authorizes the search of the passenger compartment under a second prong — when it is “reasonable to believe the vehicle contains evidence of the offense of arrest.”
 
 Id.
 
 at 1723-24. A search for this purpose is authorized irrespective of whether the passenger compartment is within the reach of the arres-tee at the time of the search.
 
 Id.
 

 In approving this second search scenario, which the Court acknowledged was an expansion of the
 
 Chimel
 
 holding,
 
 [2]
 
 the
 
 Gant
 
 Court expressly approved Justice Scalia’s concurring opinion in
 
 Thornton. Gant,
 
 129 S.Ct. at 1714. It explained:
 

 In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including
 
 Belton
 
 and
 
 Thornton,
 
 the offense of arrest will supply a basis for searching the passenger compartment of an arres-tee’s vehicle and any containers therein.
 

 Id.
 
 at 1719 (internal citations omitted) (emphasis supplied). The Court concluded that because “Gant was arrested for driving with a suspended license — an offense for which police could not expect to find evidence in the passenger compartment of Gant’s car,” the search could not be sanctioned under the second prong either.
 
 Id.
 
 at 1713.
 

 Here, Appellant’s offense of arrest was theft, an offense for which police could “expect to find evidence.” Therefore, unlike the facts in
 
 Gant
 
 where the arrest was for a traffic violation, the search here was justified as an incident to the arrest for the purpose of “gathering evidence” of the crime of theft. It makes no difference that Appellant was secured at the time of the search.
 

 In holding as we do, we specifically reject Appellant’s argument that the search was not justified because there was no evidence, apart from the offense of arrest, connecting the crime to the vehicle. The Fourth Amendment protects people, not places, and only under circumstances where the person enjoys a reasonable expectation of privacy.
 
 Katz v. United States,
 
 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When a person is seized during a lawful custodial arrest, the effects on his person are also seized and the arrestee enjoys no distinct privacy interest in these effects as they are merely an extension of his person.
 
 Ingram v. State,
 
 928 So.2d 423, 429 (Fla. 1st DCA 2006). The effects within his immediate
 
 *678
 
 control are treated the same as the effects on his person for constitutional purposes.
 
 [3]
 
 Indeed, the search incident to arrest exception, unlike the automobile exception, has never been premised on the precondition that there be independent suspicion that there are weapons or evidence at the time and place of arrest. Rather:
 

 “The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.”
 

 Belton,
 
 453 U.S. at 460, 101 S.Ct. 2860 (quoting
 
 United States v. Robinson,
 
 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)) (emphasis supplied). We conclude, therefore, that the “reasonable belief that evidence might be found” prong of
 
 Gant
 
 can be satisfied solely from the inference that might be drawn from the nature of the offense of arrest itself, and the assumption that evidence might be found at the place of the arrest.
 
 Thornton,
 
 541 U.S. at 629, 124 S.Ct. 2127 (Scalia, J„ concurring) (stating “not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended”).
 

 Our conclusion on this issue finds ample support in the concurring opinion of Justice Scalia in
 
 Thornton.
 
 In discussing the “evidence gathering” justification for a search incident to arrest, he observed that a “motorist may be arrested for a wide variety of offenses; in many cases, there is no reasonable basis to believe relevant evidence might be found in the car.”
 
 Thornton,
 
 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring). Justice Scalia cited
 
 Atwater v. City of Logo Vista,
 
 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (involving failure to wear seat-belt), and
 
 Knowles v. Iowa,
 
 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (involving speeding), as examples of these types of cases. It is clear from this discussion that the “nature of the charge” is determinative of whether there exists a reasonable basis to search for evidence, not whether there is some independent evidence that gives rise to a belief that the particular vehicle contains evidence.
 
 Id.
 
 at 630, 124 S.Ct. 2127. As Justice Scalia observed: “[I]t is not illogical to assume that evidence of a crime is most likely to be found where the suspect was apprehended.”
 
 Id.
 
 Where, as here, the offense of arrest is such that police could “expect to find” fruits and instruments of the crime, the search is justified as an incident to the arrest because it is reasonable to believe that evidence might be found.
 
 [4]
 

 
 *679
 
 We acknowledge that the second prong in
 
 Gant
 
 is capable of a more expansive interpretation.
 
 See
 
 3 Wayne R. LaFave,
 
 Search and Seizure
 
 § 7.1(d) (4th ed. 2009) (acknowledging two plausible interpretations of
 
 Gant
 
 but predicting “nature-of-the-offense” test will prevail). Arguably,
 
 Gant
 
 establishes an entirely new warrant-less search exception that requires some particularized belief that the place of arrest contains evidence. If this is the case, then the applicability of the new exception would turn on a case-by-case analysis of probabilities, or possibilities, more akin to the “automobile exception” than the search incident to arrest exception. To adopt this construction, we would have to assume that our high Court intended to completely eviscerate
 
 Belton
 
 and
 
 Robinson,
 
 even though the Court failed to expressly overrule either decision.
 
 Belton
 
 expressly approved
 
 Robinson’s
 
 conclusion that a lawful search incident to arrest ‘does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.’
 
 Belton,
 
 453 U.S. at 459, 101 S.Ct. 2860 (quoting
 
 Robinson,
 
 414 U.S. at 235, 94 S.Ct. 467). Such a construction would also contradict Justice Scalia’s concurring opinion in
 
 Thornton,
 
 which was grounded in the historical interpretation of the search incident to arrest exception and offered the “evidence gathering” rationale to bulwark and uphold
 
 Belton’s
 
 bright-line rule. Given the development of this special application of the search incident to arrest exception to automobiles, and the language used by the Court, we read
 
 Gant
 
 to address the two criticisms of
 
 Belton
 
 and reject any construction that implicitly creates a completely new exception to the warrant requirement.
 
 [5]
 
 We think
 
 Gant
 
 is simply a fine-tuning of
 
 Belton,
 
 not a complete overhaul.
 

 Although we hold that “reasonable belief,” as used in
 
 Gant,
 
 is solely determined from the “nature of the offense of arrest,” we would reach the same conclusion in this case even if we used a
 
 Tenrry
 

 [6]
 

 -like
 
 definition of the phrase “reasonable belief,” which is simply “something more” than a “suspicion based on bare intuition.”
 
 Wallace v. State,
 
 8 So.3d 492, 494 (Fla. 5th DCA 2009). The quantum of information needed to meet this standard is rather minimal, as is best exemplified by the recent case of
 
 Arizona v. Johnson,
 
 — U.S. -, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). There, police stopped a car for a traffic violation. Johnson was a back-seat passenger not suspected of committing any crime. Because he was wearing gang-like clothing and carrying a scanner, police asked him to exit the car and questioned him. He told them that he had been in prison and that he lived in a town where police knew there was a gang presence. Based on this information alone, they frisked him for weapons. The search revealed a weapon for which Johnson was arrested. The Court upheld the frisk under the reasonable suspicion standard.
 

 We think the facts here present a more compelling basis to support a
 
 *680
 
 finding of reasonable suspicion than those in
 
 Johnson.
 
 Here, police knew that Appellant had outstanding warrants for theft. When the officer looked in his car, he saw a woman’s wallet in plain view, supporting an inference that this was the fruit of his theft charge. Although these facts may not be sufficient to meet the more rigorous probable cause standard, they certainly gave rise to more than a “mere hunch” that the vehicle contained evidence of a crime.
 
 [7]
 

 In addition to concluding that the search here was lawful, we also conclude, in the alternative, that exclusion of the fruits of the search is not an available remedy in any event. Exclusion in this case would not fulfill the purpose of the exclusionary rule because police were acting in good faith reliance on the widely accepted interpretation of
 
 Belton.
 
 The purpose of the exclusionary rule is to deter police misconduct.
 
 United States v. Leon,
 
 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). It is a rule of last resort, only to be applied when it “result[s] in appreciable deterrence” and the benefits of deterrence outweigh the societal costs of suppressing evidence, thereby frustrating the truth-seeking process.
 
 Id.
 
 at 909-10, 104 S.Ct. 3405 (quoting
 
 United States v. Janis,
 
 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). Thus, to trigger the exclusionary rule, police misconduct must be “deliberate, reckless, or grossly negligent ... or in some circumstances recurring or systemic negligence.”
 
 Herring v. United States,
 
 — U.S. -, -, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009). No such misconduct is present in this case.
 

 The application of the good faith exception to the facts of this case is supported by two Supreme Court decisions applying the doctrine in analogous circumstances. In
 
 Michigan v. DeFillippo,
 
 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Court held that good faith reliance on a city ordinance, which at the time had not been declared unconstitutional, was valid regardless of the subsequent judicial determination of its unconstitutionality. Similarly, in
 
 Illinois v. Krull,
 
 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Court applied the good faith exception where police reasonably relied upon a statute authorizing warrantless administrative searches, but the statute was subsequently found to violate the Fourth Amendment. In our view, this case presents an even more compelling case for the application of the exception. Here, police relied upon a constitutional interpretation that had been widely accepted over an extensive period of time, not merely an untested statute or city ordinance.
 

 Belton
 
 itself was the product of an attempt by the Supreme Court to avoid the harsh consequences of the exclusionary rule in automobile search cases by devising a straight-forward, bright-line rule that would “guide” police through the previously murky waters of searching automobiles incident to arrest. The statement of the holding was broad and unequivocal. It was taken literally by federal courts across the country and all of the courts in Florida, which approved searches conducted even after the arrestee had been first secured by police.
 
 [8]
 
 As recently as 2004, in
 
 *681
 

 Thornton,
 
 the Supreme Court relied upon
 
 Belton
 
 to uphold the search of a secured arrestee. The broad interpretation of the
 
 Belton
 
 holding was widely taught in police academies.
 
 Gant,
 
 129 S.Ct. at 1722. Given the articulated purpose of
 
 Belton,
 
 the breadth of its holding, the widely accepted interpretation of its holding for twenty-eight years and the obvious good faith reliance upon it by police, we cannot envision a stronger ease for the application of the good faith exception. It would be contradictory to conclude that the good faith exception can be applied in cases such as
 
 Leon,
 
 where police relied on one judge’s determination that a particular search passes muster, but cannot be applied here, where the search is conducted in accordance with overwhelming precedent. To apply the exclusionary rule in this case cannot possibly deter police because they did exactly what they were trained to do based on what we (judges) told them was appropriate.
 
 Accord United States v. McCane,
 
 573 F.3d 1037 (10th Cir.2009) (applying good faith exception to uphold pre-Gcmi search);
 
 see also United States v. Peltier,
 
 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) (noting exclusionary rule serves no purpose when search is conducted in good faith reliance on statute consistently upheld by lower courts, but is subsequently declared invalid by Supreme Court).
 
 But see United States v. Gonzalez,
 
 578 F.3d 1130, 1133 (9th Cir.2009) (holding good faith exception cannot be applied).
 
 [9]
 

 We also find noteworthy that the
 
 Gant
 
 Court recognized that qualified immunity will shield officers from civil liability for
 
 pre-Gant
 
 searches conducted pursuant to the widely accepted interpretation of
 
 Belton. Gant,
 
 129 S.Ct. at 1723. If police conduct were “deliberate, reckless or grossly negligent” so as to “trigger” the exclusionary rule, it could not be qualifiedly immune.
 

 In conclusion, we hold that when the offense of arrest of an occupant of a vehicle is, by its nature, for a crime that might yield physical evidence, then as an incident to that arrest, police may search the passenger compartment of the vehicle, including containers, to gather evidence, irrespective of whether the arrestee has access to the vehicle at the time of the search. If the offense of arrest is for a crime for which there is no physical evidence, then the search of the vehicle is not authorized as an incident to arrest, unless
 
 *682
 
 the arrestee has access to the passenger compartment of the vehicle at the time of the search, as was the case in
 
 Belton.
 

 [10]
 

 For searches conducted before
 
 Gant
 
 was decided, in reliance on the widely accepted interpretation of
 
 Belton,
 
 the exclusionary rule is not available as a remedy.
 

 AFFIRMED.
 

 EVANDER and COHEN, JJ., concur.
 

 [1]
 

 . We emphasize that our decision today involves only the application of the search incident to arrest exception to the warrant requirement. Although the State has urged that we apply other warrant exceptions, such as the automobile exception and inventory, under the “tipsy coachman” doctrine, we have determined that the record before us precludes application of these alternative arguments.
 

 [2]
 

 .
 
 The Court acknowledged that this second scenario "does not follow from
 
 Chimel.” Gant,
 
 129 S.Ct. at 1719.
 

 [3]
 

 . In the context of a vehicle search,
 
 Belton,
 
 as qualified by
 
 Gant,
 
 provides a bright-line definition of the area Within an arrestee's immediate control by permitting the search of the entire passenger compartment, including open and closed containers, even though some of those areas might not be within the actual control of the arrestee at the time of the search. This special application of the search incident to arrest exception may be grounded in the notion that one's privacy rights in the passenger compartment of a vehicle are diminished.
 
 See California v. Carney,
 
 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).
 

 [4]
 

 . Justice Scalia's concurring opinion in
 
 Gant
 
 also sheds light on his interpretation of this second prong of
 
 Gant.
 
 He explained that "a vehicle search incident to arrest is
 
 ipso facto
 
 ‘reasonable’ only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe oc
 
 *679
 
 curred.”
 
 Gant,
 
 129 S.Ct. at 1725 (Scalia, J., concurring). Justice Scalia explained that he would prefer to overrule
 
 Belton's
 
 authorization to search for weapons and only allow vehicle searches incident to arrest under
 
 Gant’s
 
 second prong.
 
 Id.
 

 [5]
 

 . We agree with Professor LaFave's “hunch" that
 
 "Gant
 
 was only intended to cut back on
 
 Belton
 
 with respect to the most egregious subterfuge arrest situations, where a mere traffic violation previously provided the basis needed to make a full search of a vehicle.” LaFave,
 
 supra,
 
 § 7.1(d).
 

 [6]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [7]
 

 . Reasonable suspicion is something more than a "mere hunch.”
 
 United States v. Arvizu,
 
 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).
 

 [8]
 

 .
 
 United States v. Dorsey,
 
 418 F.3d 1038, 1041 (9th Cir.2005);
 
 United States v. Sumrall,
 
 115 Fed.Appx. 22, 24 (10th Cir.2004);
 
 United States v. Wesley,
 
 293 F.3d 541, 544 (D.C.Cir.2002);
 
 United States v. Cruz-Rojas,
 
 104 F.3d 354, 1996 WL 690008 (2d Cir.1996);
 
 United States v. Snook,
 
 88 F.3d 605, 606 (8th Cir.1996);
 
 United States v. Gonzalez,
 
 71 F.3d 819, 822 (11th Cir.1996);
 
 United States v. Jackson,
 
 
 *681
 
 918 F.2d 236, 240 (1st Cir.1990);
 
 United States v. White,
 
 871 F.2d 41, 43 (6th Cir.1989);
 
 United States v. Taylor,
 
 857 F.2d 210, 212 (4th Cir.1988);
 
 United States v. Karlin,
 
 852 F.2d 968, 970-71 (7th Cir.1988), cert. denied, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989);
 
 United States v. Schecter, 717
 
 F.2d 864, 865 (3d Cir.1983);
 
 United States v. Collins, 668
 
 F.2d 819, 821 (5th Cir.1982); Pad
 
 ron v. State,
 
 449 So.2d 811, 812 (Fla.1984);
 
 State v. Waller,
 
 918 So.2d 363, 366-67 (Fla. 4th DCA 2005);
 
 State
 
 v.
 
 Gilbert,
 
 894 So.2d 1055, 1056 (Fla. 1st DCA 2005);
 
 State v. Brooks,
 
 744 So.2d 598, 599 (Fla. 2d DCA 1999);
 
 Sommer v. State,
 
 465 So.2d 1339, 1340 (Fla. 5th DCA 1985);
 
 State v. Valdes,
 
 423 So.2d 944, 944 (Fla. 3d DCA 1982).
 

 [9]
 

 . Although the Ninth Circuit did not elaborate, apparently it concluded that it could not apply the good faith exception because the
 
 Gant
 
 Court had not. We do not view that as an impediment because the Court did not address the application of the doctrine one way or the other. The approach we take is not unprecedented. For example, in
 
 Almeida-Sanchez v. United States,
 
 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Court invalidated a search conducted pursuant to a statute and reversed the lower court’s order denying a motion to suppress. Two years later, in
 
 United States v. Peltier,
 
 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the Court held that the exclusionary rule was inapplicable where police had acted in good faith reliance upon the same statute in a pre-
 
 Almeida-Sanchez
 
 search.
 

 [10]
 

 . As the Supreme Court observed, a search under this scenario should be rare ''[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants....”
 
 Gant,
 
 129 S.Ct. at 1719.