DECISION
This matter is before the Court for decision on the Defendant's motion to suppress two prescription pills seized from a prescription bottle within the Defendant's purse after her arrest for suspicion of drunk driving.
 FACTUAL BACKGROUND
On April 24, 2009, at approximately 2 A.M., R.I. State Troopers Steven Haynes and John J. Gadrow stopped the car of Defendant Autumn Russell (hereinafter, "Defendant") at the intersection of Farewell and Van Zandt Avenues in Newport. They explained to the Defendant that they had earlier observed her operating her vehicle erratically on the Newport Bridge narrowly missing a collision with the low speed curb. The officers observed the Defendant exhibiting slurred speech, blood shot eyes and an odor of alcoholic beverages. The Defendant informed the troopers that she had consumed a couple of glasses of wine at a friend's home in Narragansett and she "just wanted to go home." (State's Mem. 2.) When the Defendant emerged from her car, she was "unsteady with an odor of alcohol" and had to "use the car to maintain her balance." Id. *Page 2 
After she failed the field sobriety test administered by Trooper Haynes, she was arrested, handcuffed, and placed in the state police cruiser. Trooper Gadrow then commenced a search of the vehicle incident to arrest and an inventory search "to protect us" and to inventory the "motorist's valuables such as purses, laptops, phones and jewelry." He also searched for evidence of alcohol consumption. The troopers seized the Defendant's purse and "looked through it for weapons," finding none. He did find a prescription bottle within the purse, with the Defendant's name on it for the drug lorazepam, an anti-anxiety medication. Trooper Gadrow then proceeded to open the bottle and retrieve two green pills, stamped on one side with the letter "M" and on the other side with the letter "C" above the number "14." He testified that he "later" determined, with the use of a "laptop pill identifier" and a "call to CVS" that the green pills were clonazepam, which is in the "same class of drugs as the lorazepam,"[1] i.e. benzodiazepine, for which the Defendant did not have a prescription.
 ANALYSIS
The Defendant argues that, after an evidentiary hearing, ". . . no reason was articulated, nor exigency alleged, that could explain why the State Police failed to follow the Federal and State Constitutional warrant mandates, why no judge was asked to issue a warrant before going through pills in a closed pill bottle — inside a purse — and analyzing them. Getting a warrant to search her vehicle's contents after her arrest was a judicial function that must have been engaged." (Def.'s Mem. 7.) *Page 3 
The State counters that no warrant was required because a "police officer is constitutionally permitted to search a vehicle and containers located within a vehicle if he has a reasonable belief, based on the nature of the offense of arrest, that he may find evidence related to the alleged offense at the place of arrest." (State's Mem. 1) (citing Arizona v Gant, 1295 S.Ct. 1710, 1716 (2009); Brown v. Florida24 So.3d 671, 678 (Fla. 2009)).
In Gant, our Supreme Court reiterated its "view" that it is permissible for "an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 129 S.Ct. at 1721. Here, the officers — after making a valid stop and effectuating a valid arrest — had the right to search the vehicle for evidence of consumption of alcoholic beverages. There is no "safety of the officers" concept triggered here. The arrestee was in the cruiser, handcuffed and unable to procure weapons to harm the troopers. Even if it were deemed reasonable for the trooper to inspect the contents of the purse, the sighting of a prescription bottle with the Defendant's name on the label does not furnish legal justification for a warrantless opening and inspection of the bottle's contents and an analysis of same.[2]
The legitimate purposes of an inventory search, as articulated inSouth Dakota v Opperman, are "to protect the defendant's property, to protect the police against claims *Page 4 
over lost or stolen property, and to protect the police from potential danger."428 U.S. 364, 369 (1976) (internal citations omitted).
The instant case bears a striking similarity to the factual scenario in a recent case decided by the Appellate Division of New Jersey's Superior Court. In New Jersey v. Mansoory, officers detained the defendant who was maneuvering his car in a ferry lane in a manner regarded by the officers to be "dangerous."
No. A-5735-08T4, slip. op. at 3 (N.J. Sup. Ct. App. Div., Mar. 17, 2010). When the officer approached the driver's side of the defendant's car, "he detected a strong odor of an alcoholic beverage emanating from the vehicle and defendant's body." Id. The defendant failed the field sobriety tests administered and was placed under arrest. Id. The defendant was then informed that his car would have to be impounded and that he could "take anything [he wanted] out of [his] vehicle before it's impounded." Id. at 4. The defendant declined to retrieve any items from his car. Id.
Another officer then inventoried the contents of defendant's car and recorded all of the valuables including a "black leather wallet."Id. at 4-5. The latter contained "six business cards, two US Airway cards, a health insurance card, a Borgata card, a Cosco card, and various credit cards with the defendant's name."Id. at 5. The officer also located "partial pieces" of "tightly folded" but unsealed white paper which he regarded as "suspicious because from [his] experience [he knew] that cocaine is packaged like that." Id. at 5-6. Based upon that "suspicion," the officer proceeded to unfold the papers within which he found white powder "later tested and confirmed to be cocaine."Id. *Page 5 
The appellate court in Mansoory upheld the lower court's evidentiary exclusion of the cocaine because it was not reasonable for the officer to open the folded papers. The lower court reasoned that "if the officer was suspicious that the folded papers contained illegal drugs or drug paraphenalia [sic], he should have obtained a search warrant to search the contents of the papers. The [lower] court said that, when the officer unfolded the papers, he went beyond the permissible scope of an inventory search because he was no longer looking for items of value for purpose of safekeeping." Id. at 6-7. The appellate court agreed and held that "the search of the contents of the papers folded in the wallet was not undertaken for one of the purposes identified inOpperman." Id. at 9.
However well-intentioned and benignly motivated Trooper Gadrow may have been, his inspection of the contents of the Defendant's prescription bottle, in the circumstances of this particular case, required the procurement of a search warrant.
 CONCLUSION
For the foregoing reasons, the Defendant's motion to suppress is granted.
[1] Trooper Gadrow's profession before becoming a state trooper was that of a pharmaceutical sales representative.
[2] The Court recognizes that the result could be different if a visual inspection of the exterior of the container caused the trooper to suspect that the bottle seized contained something other than pills, e.g., a white powder (contraband), a liquid substance (possibly alcohol), or a pair of earrings (a valuable).