ORFINGER, J.
 

 Patricia Grant and her daughter, Geisha Morris, appeal their convictions stemming from a real estate scheme that involved nine properties allegedly acquired through identify theft, straw companies and buyers, and fraudulent mortgages.
 
 [1]
 
 As explained below, we reverse Grant’s and Morris’s convictions on count 5, mortgage fraud, but affirm the remaining convictions in all respects.
 

 Florida Department of Law Enforcement Special Agent Mark Willis was part of an ongoing mortgage fraud investigation involving Grant, and obtained a warrant to arrest her. Law enforcement officers stopped Grant while she drove her car in her gated community and arrested her.
 
 [2]
 
 Incident to the arrest, Agent Willis observed and seized a large satchel bag located in the middle of the back seat. Agent Willis indicated that the bag was significant because a month or two before Grant’s arrest, he had learned that Grant kept all the documents relating to her mortgage scheme with her, and as a result, a search of her home would not yield any evidence. Agent Willis could see that the bag contained documents, but admitted that he could not determine the nature or contents of the documents until it was seized and opened. Grant’s pretrial motion to suppress the seizure of the documents was denied.
 

 At the subsequent trial, Patricia Hemingway testified that in 2004, she listed her Orlando home for sale with a real estate agent with an asking price of $450,000. After viewing the property, Grant made an offer to purchase the home for $415,000. Grant informed Hemingway that she was a mortgage broker and was buying the property for her niece. The first round of documents listed Grant’s niece as the buyer, although Hemingway had never met or spoken to her. Citing financing issues, Grant asked that the contract be assigned to Morris. Hemingway met Morris only after the contract was assigned to her.
 
 *866
 
 While the name of the buyer was changed to Morris, the $415,000 price remained the same. Because Grant was in the mortgage business, she handled the financing of the deal and chose the appraisers and the title company. Although the contract price was $415,000, Grant said that she wanted to install a pool, and therefore, had several appraisals done until the property was appraised at $450,000.
 

 The parties were not together at closing. Instead, Hemingway met with her real estate agent and signed the closing documents, including the warranty deed and the HUD settlement agreement. The documents were then given to Grant. At some point, Morris signed the paperwork to purchase the home, including the HUD settlement agreement and the mortgage application, which included false salary and employment information as well as past rent history. The paperwork was then delivered to the closing agent in Fort Lauderdale. The closing agent understood the price of this property to be $450,000, and the HUD agreement that he sent to the lender reflected that price. The deal was 100% financed. Hemingway received a $415,000 check for the sale proceeds and Morris received the remaining $35,000.
 

 In moving for a judgment of acquittal on count 5, both Grant and Morris argued that the State had failed to prove that Hemingway, the victim named in the information, relied in any way on the false mortgage documents. They contended, then and now, that the victim should have been the mortgage company that funded the loan. The trial court denied the motion and the jury found Grant guilty of one count of racketeering, one count of conspiracy to commit racketeering, seven counts of mortgage fraud, and ten counts of grand theft over $100,000. Grant was adjudicated guilty and sentenced to eighteen years in prison followed by ten years probation for racketeering, running concurrently with the five-year prison sentences imposed on the other counts. The jury found Morris not guilty of racketeering, but returned guilty verdicts on conspiracy to commit racketeering, mortgage fraud, and grand theft over $100,000. Morris was adjudicated guilty and sentenced to forty-five months in prison followed by two years probation. This appeal follows.
 

 We first address the suppression issue. Motions to suppress present mixed questions of fact and law.
 
 Wyche v. State,
 
 987 So.2d 23, 25 (Fla.2008). The court’s determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record.
 
 See Lassiter v. State,
 
 959 So.2d 360, 363 (Fla. 5th DCA 2007). However, the court’s determinations on mixed questions of law and fact and its legal conclusions are reviewed de novo.
 
 See id.; see also Ornelas v. United States,
 
 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996);
 
 Connor v. State,
 
 803 So.2d 598, 608 (Fla.2001).
 

 Grant argues that the trial court erred in denying her motion to suppress because the warrantless search of her vehicle following her arrest was unlawful. The trial court denied Grant’s motion to suppress the documents, ruling that while law enforcement “had reason to believe the defendant may have documents with her at the time that she was arrested, they had ample basis to arrest her and had a reason for it in the manner they did out of a concern for safety and the unknown factor in the home.” Grant contends that under the totality of the circumstances, the agents lacked probable cause for a war-rantless search because she had been removed from the vehicle and the agents were without recent information to provide
 
 *867
 
 a reasonable belief that evidence of a crime would be located in her vehicle.
 

 The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const, amend IV. Warrant-less searches are per se unreasonable under the Fourth Amendment, “ ‘subject only to a few specifically established and well-delineated exceptions.’ ”
 
 Arizona v. Gant,
 
 — U.S. —, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting
 
 Katz v. United States,
 
 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). “Among the exceptions to the warrant requirement is a search incident to a lawful arrest.”
 
 Id.
 
 Police may search a vehicle incident to a recent occupant’s arrest “only if the arres-tee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest.”
 
 Id.
 
 at 1723. This exception is justified by interests in officer safety and evidence preservation.
 
 See Chimel v. California,
 
 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (describing justifications for search-incident-to-arrest principle).
 

 “[W]hen the offense of arrest of an occupant of a vehicle is, by its nature, for a crime that might yield physical evidence, then as an incident to that arrest, police may search the passenger compartment of the vehicle, including containers, to gather evidence, irrespective of whether the ar-restee has access to the vehicle at the time of the search.”
 
 Brown v. State,
 
 24 So.3d 671, 681 (Fla. 5th DCA 2009). In
 
 Brown,
 
 the defendant was stopped because of outstanding warrants for theft. After identifying the defendant and confirming the warrants, Brown was arrested and placed in the patrol car. The officer then looked into the car and noticed a lady’s wallet in plain view on the driver’s seat. He seized the wallet, looked at it and determined it belonged to an elderly woman. He then searched the entire vehicle and discovered three more wallets. 24 So.3d at 674.
 

 In considering whether the wallets should be suppressed in light of
 
 Gant,
 
 this Court analyzed
 
 Chimel,
 
 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685,
 
 New York v. Belton,
 
 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and
 
 Thornton v. United States,
 
 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), which laid the framework for
 
 Gant.
 
 We ultimately concluded: “[T]he ‘reasonable belief that evidence might be found’ prong of
 
 Gant
 
 can be satisfied solely from the inference that might be drawn from the nature of the offense of arrest itself, and the assumption that evidence
 
 might
 
 be found at the place of arrest.”
 
 Brown,
 
 24 So.3d at 678 (emphasis added). Thus, because the offense of arrest in
 
 Brown
 
 was theft, “an offense for which police could ‘expect to find evidence,’ ” we held that the search was “justified as an incident to the arrest for the purpose of ‘gathering evidence’ of the crime of theft.” 24 So.3d at 677.
 

 Similarly here, the offenses for which Grant was being arrested were crimes for which a search of the vehicle could have yielded physical evidence. Grant was arrested for offenses related to mortgage fraud, and it was reasonable for the arresting agent to believe that evidence relevant to the crimes might be found in the vehicle. We conclude that the agent was justified in searching Grant’s vehicle given the arrest warrant and his observation of documents in a not-fully zipped briefcase in plain view on the backseat of the vehicle. The court did not err in denying Grant’s motion to suppress this evidence.
 

 We now consider the motion for judgment of acquittal. A motion for judgment of acquittal is reviewed de novo to determine whether the evidence is legally
 
 *868
 
 sufficient to support the jury’s verdict.
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). In ruling on a motion for judgment of acquittal, it “is the trial judge’s proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other [reasonable] inferences. That view of the evidence must be taken in the light most favorable to the state.”
 
 State v. Law,
 
 559 So.2d 187, 189 (Fla.1989). On review, the appellate court will generally not reverse a conviction that is supported by substantial, competent evidence.
 
 Williams v. State,
 
 884 So.2d 1097, 1099 (Fla. 5th DCA 2004) (citing
 
 Donaldson v. State,
 
 722 So.2d 177, 182 (Fla.1998);
 
 Terry v. State,
 
 668 So.2d 954, 964 (Fla.1996)). If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, then there is sufficient evidence to sustain a conviction.
 
 Id.
 
 (citing
 
 Banks v. State,
 
 732 So.2d 1065 (Fla.1999)).
 

 In count 5 of the information, Grant and Morris were charged with and convicted of mortgage fraud pursuant to section 817.54, Florida Statutes (2004).
 
 [3]
 
 The information alleged that Patricia Hemingway was the victim of the fraud. To prove this charge, the State was required to show that Grant and Morris: (1) obtained a mortgage, mortgage note, promissory note, or other instrument evidencing a debt or obtained the signature of a person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt; (2) by color or aid of fraudulent or false representation or pretenses; (3) with intent to defraud. The victim’s reliance on the false or misrepresented information is an essential element of the crime of mortgage fraud.
 
 Adams v. State,
 
 650 So.2d 1039, 1041 (Fla. 3d DCA 1995). Grant and Morris both assert that the trial court erred in denying their motions for judgment of acquittal because the State failed to present any evidence that Hemingway relied on any misrepresentations relating to the mortgage or note they made. We agree.
 

 All the misrepresentations made concerning the mortgage loan were made to the lender or its agents, not Hemingway, the seller. There was no evidence that Hemingway saw the mortgage documents or relied on the false or fraudulent misrepresentations made concerning the mortgage in selling the property to Morris.
 
 [4]
 
 
 *869
 

 See Darwish v. State,
 
 937 So.2d 789 (Fla. 2d DCA 2006) (explaining that where evidence fails to show that victim was induced to part with money or property in reliance on misstatement of fact by defendant, conviction for obtaining money or property by false pretenses may not be sustained; conversely, conviction for such offense may be upheld where element of reliance is proven or conceded);
 
 Pizzo v. State,
 
 910 So.2d 287, 293 (Fla. 2d DCA 2005) (holding evidence was insufficient to prove mortgage fraud as there was no evidence that defendant made any fraudulent or false representations to any named victim or that named victims relied on any false or fraudulent representations made by defendant). Accordingly, we conclude that the trial court erred in denying Grant’s and Morris’s motions for judgment of acquittal on mortgage fraud (count 5). As a result, we reverse Grant’s and Morris’s conviction and sentence for mortgage fraud as alleged in count 5 of the joint amended information. In all other respects, we affirm.
 

 AFFIRMED in part; REVERSED in part and REMANDED.
 

 TORPY and JACOBUS, JJ., concur.
 

 [1]
 

 . Grant and Morris were tried together and each has filed an appeal. Although we have consolidated these cases for disposition in this opinion, they remain separate and distinct cases for all other purposes.
 

 [2]
 

 . The validity of that stop is not challenged on appeal.
 

 [3]
 

 . Section 817.54, Florida Statutes, provides: Any person who, with intent to defraud, obtains any mortgage, mortgage note, promissory note or other instrument evidencing a debt from any person or obtains the signature of any person to any mortgage, mortgage note, promissory note or other instrument evidencing a debt by color or aid of fraudulent or false representation or pretenses, or obtains the signature of any person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt, the false making whereof would be punishable as forgery, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, ors. 775.084.
 

 [4]
 

 . For this reason, the State's reliance on several fraud cases is misplaced, and, in fact, read in favor of Grant and Morris. In each of these case, the evidence showed that the named victim was defrauded of monies due to the defendant's deception.
 
 See Finlay v. State,
 
 152 Fla. 396, 12 So.2d 112 (1943) (affirming conviction for obtaining money by false pretenses where defendant’s misrepresentations of fact induced
 
 donor
 
 to make charitable contribution);
 
 Green v. State,
 
 190 So.2d 614 (Fla. 3d DCA 1966) (affirming conviction for grand larceny by obtaining money by false pretenses where evidence showed that
 
 victim would not have given money
 
 to defendant absent defendant's false representations).
 
 See generally
 
 3 Wayne R. LaFave,
 
 Substantive Criminal Law
 
 § 19.7(c) (2d ed. 2003) (discussing element of reliance in connection with crime of obtaining money or property by false pretenses).