# Third District Court of Appeal

## State of Florida

Opinion filed October 28, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2751
Lower Tribunal No. 06-26350 I
_____

**Jacqueline Izquierdo,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Marisa Tinkler-Mendez, Judge.

Carlos J. Martinez, Public Defender, and Brian L. Ellison, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before WELLS, LAGOA, and LOGUE, JJ.

ON MOTION FOR REHEARING OR CLARIFICATION

LAGOA, J.

We deny Appellant Jacqueline Izquierdo's ("Izquierdo") Motion for Rehearing or Clarification. On our own motion, however, we withdraw our prior opinion issued on May 13, 2015, and substitute the following in its place.

Izquierdo seeks reversal of a trial order denying her motion for judgment of acquittal resulting in her conviction for obtaining a mortgage by false pretenses and first degree grand theft. We affirm.

I.   FACTUAL AND PROCEDURAL HISTORY

Izquierdo purchased a condominium unit with a mortgage from Countrywide. At the closing, Rita Garrett ("Garrett"), the closing agent, created two HUD forms.[1]  One form listed a seller contribution of $13,448.67. The other form, the one provided to Countrywide, listed a seller contribution of $85,282.29 and an unsecured note of $145,812.00 to Cosmopolitan Mortgage that purportedly was to be satisfied at the closing. It is undisputed that the note to Cosmopolitan Mortgage did not exist.

The day after the closing, Izquierdo incorporated C & C Investment and Management Corporation ("C & C Investment") and designated herself as its President and Secretary. A few days following the closing, Garrett's employer, Leopold, Korn, and Leopold, P.A., issued a check of $70,000.00 to C & C

---

[1] The State does not allege that Izquierdo made any fraudulent representations in her mortgage application, only her HUD statements. Although there was no evidence presented that the bank relied on the HUD statement in making its determination whether to approve the loan, Countrywide did rely on the HUD statements in distributing the loan proceeds.

2

Investment.  Cosmopolitan Mortgage received $146,101.86.  Garrett testified, and Izquierdo does not dispute, that the check was made out to C & C Investment at the direction of co-defendant, Pedro Rodriguez.

The State presented evidence that Countrywide relied on the information within Izquierdo's HUD form to disburse $70,000.00 to Izquierdo and to disburse funds to satisfy the non-existent Cosmopolitan Mortgage note.  At the trial, a Bank of America[2] mortgage resolution associate testified that the HUD forms were the documents used in the transaction for Izquierdo's condominium unit.  The Bank of America witness testified that the bank "rel[ies] on these records in order to function as a corporation, and [it] rel[ies] on their truthfulness."  A fraud examiner also testified that the use of HUD forms resulted in Izquierdo receiving $70,000.00 cash and Cosmopolitan Mortgage receiving $146,101.86 for the non-existing note.  The loan at issue prohibited cash to the buyer as part of the loan proceeds, and the fraud examiner testified that Izquierdo wrote checks from her C & C Investment's account to herself, the Lee County Tax Collector, State Farm Insurance, two other mortgage companies, and Countrywide.

II.    STANDARD OF REVIEW

A motion for judgment of acquittal is reviewed *de novo* to determine whether the evidence is legally sufficient to support the jury's verdict.  See Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002).  When considering a motion for

---

[2] Bank of America, N.A. is Countrywide's successor by way of a merger in 2011.

judgment of acquittal, all evidence is viewed in the light most favorable to the State. See Irizarry v. State, 905 So. 2d 160, 165 (Fla. 3d DCA 2005); see also Nooe v. State, 892 So. 2d 1135, 1138 (Fla. 5th DCA 2005). As explained in Bufford v. State, 844 So. 2d 812, 813 (Fla. 5th DCA 2003):

A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. State v. Williams, 742 So. 2d 509, 510 (Fla. 1st DCA 1999). The court should not grant a motion for judgment of acquittal unless the evidence, when viewed in light most favorable to the State, fails to establish a prima facie case of guilt. Dupree v. State, 705 So. 2d 90, 93 (Fla. 4th DCA 1998). In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence. Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974). It is the trial judge's task to review the evidence to determine the presence or absence of competent evidence from which a jury could infer guilt to the exclusion of all other inferences. State v. Law, 559 So. 2d 187, 189 (Fla. 1989). We review the record de novo to determine whether sufficient evidence supports the verdict. Williams, 742 So. 2d at 511.

In a circumstantial evidence case, the trial judge must determine whether competent evidence exists from which the jury could infer guilt to the exclusion of all other inferences. See State v. Law, 559 So. 2d 187, 189 (Fla. 1989). The State must only introduce competent evidence that is inconsistent with the defendant's theory of events. See Giralt v. State, 935 So. 2d 599, 601-02 (Fla. 3d DCA 2006). The State is not required to conclusively rebut every possible variation of events that can be inferred from the evidence. Id. If the State creates an inconsistency with the defendant's theory, a motion for judgment on acquittal should be denied

4

to let the jury resolve the inconsistency. Id. at 602. If, after the evidence is viewed in the light most favorable to the State, a rational juror could find the existence of the elements of the offense beyond a reasonable doubt, there is sufficient evidence to sustain a conviction. Grant v. State, 43 So. 3d 864, 868 (Fla. 5th DCA 2010).

III. ANALYSIS

Izquierdo asserts that the State failed to present a prima facie case that she obtained a mortgage from Countrywide by false pretenses in violation of section 817.54, Florida Statutes (2006). Section 817.54 provides:

> **Any person who, with intent to defraud, obtains any mortgage**, mortgage note, promissory note or other instrument evidencing a debt from any person or obtains the signature of any person to any mortgage, mortgage note, promissory note or other instrument evidencing a debt by color or aid of fraudulent or false representation or pretenses, or obtains the signature of any person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt, the false making whereof would be punishable as forgery, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(emphasis added).

To obtain a mortgage through fraud, the victim must rely on the fraudulent statements. See generally Green v. State, 190 So. 2d 614, 616 (Fla. 3d DCA 1966) (reasoning that the victim's reliance on the false or misrepresented information is an essential element of obtaining property by false pretense); see also Ex parte Stirrup, 19 So. 2d 712, 713 (Fla. 1944) ("Inasmuch as deception is the essence of the crime, there must be a causal relation between the representation or statement made and the delivery of the property.").

5

The State has the burden of proving the victim relied on the defendant's misrepresentation and was deceived by it. See Adams v. State, 650 So. 2d 1039, 1041 (Fla. 3d DCA 1995); see also Barrios v. State, 75 So. 3d 374, 376 (Fla. 4th DCA 2011). The victim must be aware of the false information in order to rely on it. See Grant, 43 So. 3d at 868 (finding that the alleged victim, the seller, did not rely on misrepresentations made concerning a mortgage loan because there was no evidence that the seller saw the mortgage documents); see also Pizzo v. State, 910 So. 2d 287, 293 (Fla. 2d DCA 2005) (reasoning that the State did not establish reliance when there was no evidence the defendant had any contact with the victim/customer and the customer only signed the defendant's fraudulent forms after a third party's misrepresentations and omissions regarding the forms).

Here, the State introduced evidence supporting Countrywide's reliance on Izquierdo's false representations regarding her mortgage in the HUD statement provided to Countrywide and that the money was disbursed to Izquierdo on the basis of the false statements in the HUD statement. As such, we conclude that the State presented a prima facie case that Izquierdo obtained a mortgage by false pretenses.

Izquierdo further argues on appeal that the State failed to present a prima facie case that she intended to temporarily deprive Countrywide of its property ($70,000.00 cash back to Izquierdo via C & C Investment and $146,101.86 to

6

Cosmopolitan Mortgage) in violation of sections 812.014(1), (2)(a), Florida

Statutes (2006). Section 812.014(1), Florida Statutes (2006), provides:

> A person commits theft if he or she knowingly obtains or uses, [3] or
> endeavors to obtain or to use, the property of another with intent to,
> either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit
> from the property.
> (b) Appropriate the property to his or her own use or to the use of any
> person not entitled to the use of the property.

Izquierdo argues that the State failed to present evidence that she intended to

deprive Countrywide of its property. Specifically, she argues that there is no

evidence inconsistent with her intent to pay off her Countrywide mortgage as

shown by her eighteen monthly payments to Countrywide.

Because intent is a state of mind, it is usually proven with circumstantial

evidence. See Sebastiano v. State, 14 So. 3d 1160, 1164 (Fla. 4th DCA 2009).

Concerning motions for judgment of acquittal where the State's evidence is

---

[3] Section 812.012(3), Florida Statutes (2006), in turn, defines "obtains or uses" as
any manner of:

> (a) Taking or exercising control over property.
> (b) Making any unauthorized use, disposition, or transfer of property.
> (c) Obtaining property by fraud, willful misrepresentation of a future
> act, or false promise.
> (d)1. Conduct previously known as stealing; larceny; purloining;
> abstracting; embezzlement; misapplication; misappropriation;
> conversion; or **obtaining money or property by false pretenses**,
> fraud, or deception; or
>     2. Other conduct similar in nature.

(emphasis added).

circumstantial in nature, the Supreme Court of Florida explained in Law, 559 So. 2d at 188-89:

> A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. . . .
>
> It is the trial judge's proper task to *review* the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. Spinkellink v. State, 313 So. 2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. See Toole v. State, 472 So. 2d 1174, 1176 (Fla. 1985). Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.

(footnote omitted). Convictions that are supported by competent and substantial evidence are not generally reversed on review. See Barrios, 75 So. 3d at 376 (citing Pagan, 830 So. 2d at 803).

Izquierdo relies upon Barrios, 75 So. 3d at 374, and Green v. State, 90 So. 3d 835 (Fla. 2d DCA 2012), to support her assertion that the State failed to provide sufficient evidence to prove she intended to deprive Countrywide of its property. In Barrios, the sole fact that the defendant made a false statement about his income to qualify for a mortgage was

8

insufficient to prove that the defendant committed theft. Barrios, 75 So. 3d at 377. Barrios stands for the proposition that evidence of misrepresentation of income on a mortgage application, without more, is insufficient to prove the defendant intended to deprive a bank of its property.

Here, unlike Barrios, the State presented evidence beyond the mere existence of misrepresentations in the HUD form submitted to the bank. Here, Izquierdo executed two HUD forms and submitted the false one to Countrywide. Based on that false HUD statement, Izquierdo received a cash payment of $70,000.00 even though the closing instructions for Izquierdo's Countrywide mortgage state that a borrower must not receive any cash proceeds unless the lender approves it. It was undisputed that Countrywide, the lender, did not approve a cash out in Izquierdo's transaction. Through Garrett's testimony detailing the closing procedure and the fraud examiner's testimony regarding the role of the HUD forms in Izquierdo's transaction, the State presented sufficient evidence that Izquierdo intended to deprive Countrywide of its property.

Izquierdo's reliance on Green is similarly unavailing. In Green, the defendant misrepresented income on a mortgage application. 90 So. 3d at 836. The Second District reasoned that Green's "misrepresentations could provide circumstantial evidence of Green's intent to steal." Id. at 837. However, the inference that Green intended to commit theft was contradicted by his diligent payments on the loan and his repayment of the mortgage in full within six months.

9

Id. The court held in <u>Green</u> that evidence of Green's misrepresentations on the mortgage application was not inconsistent with the reasonable hypothesis that he intended to repay the loan. Id. Additionally, as noted by Judge Altenbernd in his concurring opinion, the bank gave Green funds in a "completely normal, secured transaction" as the bank obtained the rights to the property identified in the mortgage and the defendant promptly made all payments on the mortgage. Id. at 838 (Altenbernd, J., concurring).

Here, the State presented evidence inconsistent with Izquierdo's hypothesis that she intended to pay off the Countrywide mortgage. Although Izquierdo made payments on the mortgage, it is unreasonable to infer that she intended to pay off the mortgage after she received the $70,000.00 cash back. See <u>Henry v. State</u>, 133 So. 3d 1034, 1038 (Fla. 4th DCA 2014) (reasoning that, although partial payment can negate an inference of an intention to steal, the State can present sufficient circumstantial evidence of felonious intent if there is "evidence of willful misrepresentations to induce the seller to close on the transaction"). Additionally, Izquierdo's transaction was not a "completely normal" transaction like the mortgage loan in <u>Green</u>. Izquierdo took on the obligation to pay someone else's debt, namely, the non-existent note "owned" by Cosmopolitan Mortgage and for which Cosmopolitan, not Izquierdo, received $146.101.86. Garrett also testified that it is rare for a buyer to receive cash back from a mortgage because Countrywide prohibits the buyer from receiving a cash back.

10

Additionally, the record clearly establishes that Izquierdo took money she was not entitled to because there was no seller contribution of $85,282.29 as stated in the HUD form. Cf. Vroom v. State, 48 So. 3d 82, 84 (Fla. 2d DCA 2010) (reasoning that the State could not prove the defendant's intent to commit theft because there was no evidence that the defendant's financial disclosure was inaccurate at the time it was made). The State introduced evidence that Izquierdo received $70,000.00 cash back despite Countrywide's closing instruction prohibiting Izquierdo from receiving cash and that Cosmopolitan Mortgage received $146,101.86 for the non-existent note. Both of these improper payments resulted from misrepresentations made by Izquierdo on her HUD statement. We therefore find that the State presented a prima facie case that Izquierdo committed first degree grand theft.

Accordingly, we affirm Izquierdo's conviction for obtaining a mortgage through false pretenses and first degree grand theft.

AFFIRMED.