NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CAMERON D. ANCRUM,                  )
DOC #H43092,                        )
                                    )
          Appellant,                )
                                    )
v.                                  )          Case No. 2D13-5329
                                    )
STATE OF FLORIDA,                   )
                                    )
          Appellee.                 )
                                    )
_____     )

Opinion dated September 3, 2014.

Appeal from the Circuit Court for
Highlands County; William D. Sites
and Wayne M. Durden, Judges.

Howard L. Dimmig, II, Public Defender,
and Richard J. Sanders, Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Donna S. Koch,
Assistant Attorney General, Tampa,
for Appellee.


WALLACE, Judge.

          Cameron D. Ancrum appeals his judgment and sentences for possession

of a firearm with an altered serial number, possession of cocaine, possession of

cannabis, and possession of paraphernalia after entering an open, no contest plea to

those offenses while reserving his right to appeal the trial court's denial of his dispositive motion to suppress. We affirm in part and reverse in part.

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

Mr. Ancrum argued in the trial court that police illegally searched his personal property and seized contraband after a relative consented to a search of the bedroom where he was staying. The relative leased a three-bedroom apartment and had permitted Mr. Ancrum to stay there with her and her children for a couple of weeks before his arrest. Mr. Ancrum occupied one of the bedrooms. Although he had provided the relative some money for expenses, he did not pay rent. The relative and her children continued to have access to the bedroom that Mr. Ancrum occupied. Moreover, Mr. Ancrum did not take any steps to establish any greater degree of privacy in his bedroom by padlocking the door or securing any other space inside of the room.

When police officers arrived at the apartment to arrest Mr. Ancrum on charges unrelated to this case, the relative permitted them to enter the apartment and the bedroom where Mr. Ancrum was sleeping. After the officers arrested Mr. Ancrum and removed him from the room, the relative consented to a search of the bedroom. The officers found crack cocaine in an open cigarette pack on the floor of the bedroom closet and cannabis and paraphernalia inside of a jacket on the bedroom floor. Based upon the evidence seized during the search, the State charged Mr. Ancrum with possession of cocaine with intent to sell within 1000 feet of public housing, possession of cannabis, and possession of paraphernalia.[1] Mr. Ancrum moved to suppress the

---

[1]The officers also seized a firearm, which fell out of the bed where Mr. Ancrum was sleeping during his arrest. The State charged Mr. Ancrum with possession of a firearm with an altered serial number after seizing the firearm. Mr. Ancrum has not

2

evidence seized during the search. After the trial court denied his motion, Mr. Ancrum entered an open plea to possession of cocaine, possession of cannabis, and possession of paraphernalia while reserving his right to appeal the trial court's dispositive ruling on his motion to suppress.

## II. THE TRIAL COURT'S RULING

In denying Mr. Ancrum's motion to suppress, the trial court concluded that the relative had actual authority to consent to the officers' entry into her apartment and had apparent authority to permit a search of the bedroom that Mr. Ancrum occupied. The trial court further concluded that "[t]he officers had the authority to search the closet in the bedroom occupied by [Mr. Ancrum] based upon consent given by [the relative]. The cigarette pack that contained cocaine was not particularly identifiable to [Mr. Ancrum] at the time and was lawfully seized and searched." Conversely, the trial court found that Mr. Ancrum's jacket "was particularly identifiable to [Mr. Ancrum] and therefore [the relative] did not have apparent authority to provide consent to the officer[s] for the search of the contents within the jacket." The trial court concluded, however, that because "the jacket was on the bedroom floor near the bed in which [Mr. Ancrum] was located and arrested, was within plain view of the officers, and was within the wing span of [Mr. Ancrum] at the time of his arrest[,] . . . the jacket was properly searched as incident to the arrest."

## III. DISCUSSION

### A. The Consent to Search

challenged the seizure of the firearm or his conviction for possession of a firearm with an altered serial number in this appeal.

3

On appeal, Mr. Ancrum concedes that his relative had actual authority to consent to the search of the bedroom that he occupied, but he challenges the search of the cigarette pack and the search of the jacket. We agree with the trial court's legal conclusion that the relative had actual authority to consent to the search of the apartment and at least apparent authority to consent to the search of the bedroom. In addition, the officers reasonably believed that the relative's authority and consent extended to the bedroom closet, which was not secured in any way.

## B. The Cigarette Pack

We also agree with the trial court's finding that the open cigarette pack discovered on the closet floor was properly seized and searched because the cigarette pack was not particularly identifiable as the personal property of Mr. Ancrum for two reasons. First, the cigarette pack was not secured inside of a purse or backpack, but was open and lying on the floor. Second, unlike a purse or backpack, a cigarette pack is not an inherently personal item. People do not generally store items intended to be kept private in a cigarette pack. When left open in an area to which others have common access, a cigarette pack is arguably similar to a box of cookies or a pack of gum that might be opened by others.

Because of the nature and location of the open cigarette pack, the officers could have reasonably believed that the relative had common authority over and common use of the cigarette pack. Further, the officers knew that Mr. Ancrum had only been staying in the apartment for a couple of weeks, and it would not be unreasonable to assume that someone other than Mr. Ancrum had left the cigarette pack on the closet floor. See King v. State, 79 So. 3d 236, 238-39 (Fla. 1st DCA 2012) ("[L]aw

4

enforcement may only rely on a person's apparent authority to give consent [to search personal property] if such consent is reasonable given the totality of the circumstances." (quoting Brock v. State, 24 So. 3d 703, 704 (Fla. 1st DCA 2009)). Under the circumstances shown here, we conclude that the officers were not required to conduct further inquiry about ownership of the cigarette pack before searching it. See id. at 239 ("If the basis for the asserted authority is not clear, the officer must conduct further inquiry before relying on the third party's representations.").

### C. The Jacket

On the other hand, we agree with the trial court's finding that the jacket was a personal item, particularly identifiable to Mr. Ancrum, and that the relative did not have apparent authority to consent to the search of the jacket. We disagree, however, with the trial court's determination that the officers' search of the jacket was justifiable as a search incident to Mr. Ancrum's arrest.

"Searches incident to arrests . . . are permitted: (1) to protect the officer's safety, and (2) to prevent destruction of evidence." Brown v. State, 377 So. 2d 819, 820 (Fla. 1st DCA 1979) (interpreting Chimel v. California, 395 U.S. 752 (1969)). Accordingly, "[a] warrantless search incident to a lawful arrest is limited to the area within the immediate control of the defendant." State v. Futch, 715 So. 2d 992, 994 (Fla. 2d DCA 1998). "A warrantless search outside the area controlled by a defendant cannot be upheld as a search incident to an arrest." Brown, 377 So. 2d at 821.

In Arizona v. Gant, 556 U.S. 332 (2009), the Supreme Court addressed the search of a motor vehicle incident to the arrest of a defendant who had recently been an occupant of the vehicle. The Court held, in part, that once law enforcement

5

had removed the defendant from the vehicle, a search of the vehicle incident to the defendant's arrest could not be justified as a means to protect the arresting officer or to prevent the destruction of evidence because the defendant no longer had access to the vehicle or its contents. Id. at 341-48.

Recently, in Smallwood v. State, 113 So. 3d 724 (Fla. 2013), the Florida Supreme Court applied the Supreme Court's reasoning in Gant to the search of a defendant's cell phone incident to his arrest. The court noted that after Gant, "while the search-incident-to-arrest warrant exception is still clearly valid, once an arrestee is physically separated from an item or thing, and thereby separated from any possible weapon or destructible evidence, the dual rationales for this search exception no longer apply." Id. at 735. Accordingly, the search of an item from which a defendant has been physically separated cannot be upheld as a search incident to the defendant's arrest.

Here, Mr. Ancrum's jacket was located on the floor in the bedroom where Mr. Ancrum was arrested. And, while arresting Mr. Ancrum, the officers pulled him from his bed to the floor. But there was no evidence about the proximity of the jacket to the bed or Mr. Ancrum, and there was no testimony that the jacket was within his immediate control at any point. Thus the trial court's finding that the jacket was within Mr. Ancrum's "wing span"[2] is not supported by the evidence. More important, the officers removed Mr. Ancrum from the bedroom before the search. Thus the trial court's

---

[2]"In law enforcement training, the phrases used to remember the area that can be searched following the arrest of a person are often referred to as the area of 'immediate control,' the theoretical 'wingspan' of the arrested person, or the grabbable area." Jeffrey R. Beck, Arizona v. Gant: Heightening a Person's Expectation of Privacy in a Motor Vehicle Following Searches Incident to Arrest, 55 S.D. L. Rev. 299, 307 n.106 (2010) (citing John G. Mills, Jr. et al., The Law Officer's Pocket Manual, § 7.6 (2008 ed.)).

6

conclusion that the officers could search the jacket incident to Mr. Ancrum's arrest is contrary to the holding in <u>Smallwood</u> because Mr. Ancrum was physically separated from the jacket when it was searched.  Accordingly, we reverse the trial court's denial of the motion to suppress with regard to the cannabis and the paraphernalia found in the jacket.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the trial court's order to the extent that it denies suppression of the rock cocaine discovered in the cigarette pack, and we affirm Mr. Ancrum's convictions and sentences for possession of a firearm with an altered serial number and for possession of cocaine.  We reverse the order to the extent that it denied suppression of the cannabis and paraphernalia found in Mr. Ancrum's jacket, and we reverse Mr. Ancrum's convictions and sentences for possession of cannabis and for possession of paraphernalia.  On remand, the trial court shall discharge Mr. Ancrum on those charges.

Affirmed in part, reversed in part, and remanded.


ALTENBERND and SLEET, JJ., Concur.

7