NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


STATE OF FLORIDA,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellant,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 2D14-3124
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
RORI SHERLENE BULTMAN,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Appellee.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

Opinion filed May 13, 2015.

Appeal from the Circuit Court for Polk
County; Catherine L. Combee, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Helene S. Parnes,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender, and
Starr L. Brookins, Assistant Public Defender,
Bartow, for Appellee.


VILLANTI, Chief Judge.

⠀⠀⠀⠀⠀The State appeals the trial court's grant of defendant Rori Bultman's

motion to suppress. We affirm in part and reverse in part. Because the trial court did

not err in excluding evidence that was discovered pursuant to an illegal search, we

affirm that portion of the order. However, we reverse that portion of the order that also suppressed evidence later obtained from Bultman because her detention was lawful.

On July 26, 2013, police went to Bultman's house to search for a suspect in an unrelated case. Upon arriving at Bultman's house, the police asked if they could look inside for the suspect. Bultman agreed, and immediately upon entering the house, the officers smelled marijuana. The officers then asked Bultman about the odor, and Bultman responded that she had been smoking marijuana earlier that day. One officer stayed with Bultman and they exited to the front yard while the other officer proceeded to the backyard, where he found a "boat" made of aluminum foil that was caked with methamphetamine. Back in the front yard, the officers asked Bultman for consent to search the premises for narcotics, but she refused. The officers then asked Bultman for her identification, which she indicated was in her purse located in her car. Bultman retrieved her purse and handed the officers her identification. However, Bultman then attempted to hide her purse from the officers, and when they asked to search the purse, she refused. The officers repeatedly asked Bultman to place the purse on the hood of their police car for officer safety and twice had to remove it from her person. The officers arrested Bultman for resisting their commands to leave the purse on the hood of the car and conducted a search of her purse incident to arrest, wherein they found drugs and paraphernalia. Bultman was charged with resisting an officer without violence for impeding the officers' lawful investigation, possession of methamphetamine, possession of cannabis, and possession of drug paraphernalia. Bultman filed a motion to suppress the methamphetamine boat, the drugs and paraphernalia retrieved from her purse, and any statements she made to the officers. The motion to suppress the

physical evidence was granted in toto on the basis that the officers did not have consent to search Bultman's backyard, where the methamphetamine boat was found, and that the smell of marijuana was an insufficient reason by itself to justify detaining Bultman.

In reviewing the trial court's grant of the motion to suppress, this court uses a dual standard: the court's application of the law to the facts is reviewed de novo, but this court must defer to the trial court's findings of fact that are supported by competent, substantial evidence. Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003).

Regarding the boat obtained from Bultman's backyard, the trial court in this case explicitly found that it was "unknown whether the Defendant's consent extended to the search of her backyard nor whether Deputy Ranze could observe the [boat] in plain view from the inside of the home or is [sic] open to public view." At the hearing, Deputy Ranze testified that he had searched the home for the missing suspect with Bultman's consent and that he then went immediately to the backyard before seeking Bultman's consent to search the premises for narcotics. The other officer in this case, Deputy Lockard, testified that Deputy Ranze had exited the home out the front door with Bultman after conducting the initial search and then got permission from Bultman to search the backyard. Given this conflict in facts, the trial court did not err in finding the search of the yard to be without consent and in granting the motion to suppress the methamphetamine boat found in the backyard on this basis. See Reynolds v. State, 592 So. 2d 1082, 1086 (Fla. 1992) (holding that the State has the burden to prove by a preponderance of the evidence that valid consent was obtained). Even if Bultman was legally detained by the officers after they smelled marijuana, as the

State contends on appeal, this detention did not provide a sufficient basis for the officers to continue searching around the house. See Vasquez v. State, 870 So. 2d 26, 30 (Fla. 2d DCA 2003) (" 'If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house . . . .' " (quoting Vale v. Louisiana, 399 U.S. 30, 33-34 (1970))). Accordingly, we affirm the suppression of the methamphetamine boat.

As to the evidence procured from Bultman's purse, however, we reverse. First, the officers lawfully detained Bultman after smelling marijuana inside the house, a place they were lawfully allowed to be after Bultman gave consent to search for the missing suspect. See Zeigler v. State, 922 So. 2d 384, 385 (Fla. 1st DCA 2006) (holding that probable cause for detention existed after an officer smelled marijuana in a place where he was lawfully allowed to be). Second, because Bultman was being lawfully detained due to the smell of marijuana at the time she refused to follow the officers' orders to leave the purse on the hood of the car, Bultman could have been and in fact was arrested for resisting an officer without violence. See A.R. v. State, 127 So. 3d 650, 653-54 (Fla. 4th DCA 2013) ("A conviction for resisting an officer without violence requires proof that (1) the officer was engaged in the lawful execution of a legal duty; and (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty. . . . Examples of the lawful execution of a legal duty include: (1) serving process; (2) legally detaining a person; or (3) asking for assistance in an emergency situation." (citations omitted) (internal quotation marks omitted)). Because Bultman had the purse on her person at the time of her arrest for resisting an officer without violence, the officers could lawfully conduct a search of the purse incident

to arrest.  See United States v. Robinson, 414 U.S. 218, 235 (1973); Chimel v. California, 395 U.S. 752, 762-63 (1969).

Without a definitive showing that the officers had Bultman's consent to search her backyard, the evidence obtained from Bultman's backyard was properly suppressed.  However, given the legality of her detention and arrest, the evidence gathered from Bultman's purse should not have been suppressed.  Accordingly, we reverse this portion of the trial court's order.

Affirmed in part, reversed in part, and remanded for further proceedings.


MORRIS and SALARIO, JJ., Concur.