# Third District Court of Appeal

## State of Florida

Opinion filed January 17, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1101
Lower Tribunal No. 15-24324
_____

**Bryan Harris,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Carlos J. Martinez, Public Defender, and Natasha Baker-Bradley, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Kayla H. McNab, Assistant Attorney General, for appellee.

Before SUAREZ, LAGOA, and SCALES, JJ.

LAGOA, J.

Appellant, Bryan Harris ("Harris"), appeals his final judgment of conviction and sentence, challenging the denial of his motion to suppress physical evidence from the warrantless search of his backpack following his arrest. Because the warrantless search was not valid as either a search incident to arrest or an automobile search, we reverse and remand for further proceedings.

I.     FACTUAL AND PROCEDURAL HISTORY

About 10:44 a.m. on Thanksgiving Day 2015, Miami Gardens Police Officers Blanco and Santiesteban were patrolling the residential area of NW 191st Street and 32nd Avenue in an unmarked vehicle. The area is known for dirt bikes being illegally driven on the streets.

The officers heard the loud noise of such a dirt bike and observed Harris driving one in their direction. The dirt bike lacked headlights, taillights, turn signals, rearview mirrors, and a tag. Officer Santiesteban, the driver, conducted a U-turn and followed Harris. When Harris ran a red light, the officers activated their lights and siren in order to conduct a traffic stop of Harris. Harris attempted to drive away, but this ended quickly as Harris fell off the dirt bike. Officer Blanco, the passenger, then exited the unmarked police vehicle and arrested Harris for reckless driving and driving an unregistered vehicle. Officer Blanco removed a backpack from Harris's person, handcuffed Harris, and placed the backpack on the hood of the unmarked police vehicle. Officer Blanco then directed Harris, who

2

was handcuffed, to sit on the grass approximately five feet from the officers' vehicle.

In their attempt to identify Harris and the dirt bike, Officer Blanco asked Harris if he had any proof of ownership. Harris stated he had paperwork in his backpack and told Officer Blanco to look in the small front compartment of the backpack.[1] Officer Blanco admitted that upon opening the front compartment, he found paperwork for the dirt bike.[2] Officer Blanco further testified that Harris specifically told him not to open the main compartment of the backpack.[3] When

---

[1] On cross-examination, Officer Blanco acknowledged that Harris "directed [him] to the front zip pocket of the back pack."

[2] Specifically, Officer Blanco testified:

> Q. Okay.
> And you opened the backpack the front pocket where he told you to go?
> A. Correct.
> Q. And inside that front zip pocket you saw paperwork concerning the dirt bike?
> A. To a dirt bike, correct.
> Q. To a dirt bike?
> A. Correct.

[3] Specifically, Officer Blanco testified:

> Q. And at what point did you go back to the backpack?
> A. We asked him if he had any proof of ownership to the dirt bike. He stated that he had paperwork to it in his backpack and also I went through his backpack to open it up. He stopped me and directed me as I was going to open the main compartment. He stopped me, directed me

3

Officer Blanco opened the smaller compartment, he smelled marijuana and, based on that smell, proceeded to search the remainder of the bag, eventually finding marijuana, oxycodone, and drug paraphernalia.

Harris was subsequently charged with possession of marijuana, oxycodone, and drug paraphernalia. Harris filed a motion to suppress the physical evidence found within his backpack. At the two-day suppression hearing, the State presented the testimony of Officer Blanco and a portion of the deposition of Officer Santiesteban. The trial court denied the motion to suppress, finding that

to the front smaller compartment which I opened up.

\* \* \* \*

Q. So once you discovered that there was paperwork for the dirt bike that's when you opened the main pouch of the backpack?
A. That's when I opened the small zipper and I smelled marijuana coming out of it then I opened the main compartment.

\* \* \* \*

Q. He specifically told you do not open the larger container, right?
A. Correct.
Q. But regardless of what he said according to you his consent or non-consent at that point would have been irrelevant, right?
A. Correct.
Q. No matter what, you would have searched that backpack at that point?
A. Correct. I would have searched it for inventory.
Q. Inventory search no matter what you were going to search that backpack?
A. Inventory to arrest.

4

there was probable cause to stop Harris and that there was a valid search incident to arrest and determining the other presented arguments were either irrelevant or moot in light of the first two findings. Based on the trial court's ruling, Harris entered a plea of guilty and reserved his right to appeal the denial of his motion to suppress. This appeal timely followed.

## II.    STANDARD OF REVIEW

In reviewing a trial court's ruling on motions to suppress, "appellate courts . . . accord a presumption of correctness . . . to the trial court's determination of historical facts," but review de novo "mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth . . . Amendment." Connor v. State, 803 So. 2d 598, 608 (Fla. 2001). In considering the relevant case law, we are required "to adhere to the interpretations of the United States Supreme Court," but are "not bound to follow the decisions of other federal courts." State v. Markus, 211 So. 3d 894, 902 (Fla. 2017); accord Smallwood v. State, 113 So. 3d 724, 730 (Fla. 2013). If no U.S. Supreme Court precedent is factually or legally on point, we may review "Florida state precedent, as well as other state and federal decisions for guidance on a search and seizure issue." Markus, 211 So. 3d at 902.

III.    ANALYSIS

On appeal, Harris challenges the trial court's determination that the search of his backpack was valid as a search incident to his arrest. In response, the State supports affirmance of the trial court's determination, and also argues, in the alternative, that Harris consented to the search of his backpack.

A.    Search Incident to Arrest

Warrantless searches "'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Searches conducted incident to the arrest of a person are one such exception. See United States v. Robinson, 414 U.S. 218, 224-25 (1973). However, as the Supreme Court has acknowledged, this exception has been applied inconsistently. See, e.g., Gant, 556 U.S. at 350 (noting the "checkered history of the search-incident-to-arrest exception"); Chimel v. California, 395 U.S. 752, 755 (1969) ("The decisions of this Court bearing upon that question have been far from consistent, as even the most cursory review makes evident.").

The State contends that the trial court was correct in finding that Officer Blanco's search of Harris's backpack was incident to arrest. First, the State argues that the backpack was a container within Harris's reach both at the time of his

arrest and through the time of the search. See Chimel, 395 U.S. at 762-63. Second, the State argues that, as a container on Harris's person at the time of his arrest, the backpack was subject to search even if it was removed from Harris's reach. Robinson, 414 U.S. at 236. Third, the State argues that the backpack was searchable under the automobile exception as most recently iterated by Gant. Finally, the State argues that under the tipsy coachman doctrine this Court may affirm the trial court's ruling by finding that Harris consented to the search of the back pack. We address each argument in turn.

1.    Within Harris's Reach

Modern jurisprudence delineating the search incident to arrest exception begins with Chimel v. California, 395 U.S. 752 (1969). In Chimel, the Court held that when an individual is arrested, the police officer may search the arrestee's person and the area within his immediate control, the latter being "the area from within which he might gain possession of a weapon or destructible evidence." Id. at 763. While the purpose of the exception is for officer safety and preservation of evidence, no showing that either exists is necessary for the search to fall within the exception. Robinson, 414 U.S. at 235. Instead, subsequent litigation has mostly dealt with the concept of the area within the control of the arrestee.

In the instant case, Harris's backpack was not in the area within his immediate control at the time of the search. As noted, Officer Blanco removed the

backpack from Harris, handcuffed him, and then sat him down against a fence five feet from the car's hood. Officer Blanco placed the backpack on the hood, and within five minutes, examined it. Even if Harris was a combination of "an acrobat [or] Houdini,"[4] we do not see how Harris could have gained access to the backpack following his arrest. Thus, we find that Harris's backpack was outside his area of control. See State v. K.S., 28 So. 3d 985, 987 (Fla. 2d DCA 2010) (finding an arrestee out of reach of car where he had been separated from car, handcuffed, and was under supervision of other officers). Accordingly, the search of the backpack cannot be upheld under this theory.

2.    A Container on Harris's Person

As part of the search incident to arrest exception, courts have faced difficulty in determining whether a container on or near an arrestee may be searched. The basic premise is that an officer may seize, inspect, and search any container found on the arrestee's person during a search incident to arrest. See Robinson, 414 U.S. at 236. In Robinson, an officer conducting a search incident to arrest found a crumpled package of cigarettes. Id. at 223. Seizing it, he inspected it and found heroin. Id. The Court concluded that "[h]aving in the course of a lawful search

_____

[4] United States v. Lyons, 706 F.2d 321, 330 (D.C. Cir. 1983) ("To determine whether a warrantless search incident to an arrest exceeded constitutional bounds, a court must ask: was the area in question, at the time it was searched, conceivably accessible to the arrestee-assuming that he was neither 'an acrobat [nor] a Houdini'?" (footnote omitted) (quoting United States v. Mapp, 476 F.2d 67, 80 (2d Cir.1973))).

8

come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as 'fruits, instrumentalities, or contraband' probative of criminal conduct." Id. at 236; see also Gustafson v. Florida, 414 U.S. 260 (1973). Robinson thereby opened the door for the search of containers found incident to arrest.

The Supreme Court revisited this doctrine a few years later in United States v. Chadwick, 433 U.S. 1 (1977), abrogated on other grounds by California v. Acevedo, 500 U.S. 565 (1991). In Chadwick, federal narcotics agents received intelligence that a particular footlocker contained marijuana. Id. at 3-4. After tracking down the footlocker, a trained dog alerted the agents that the footlocker contained marijuana. Id. at 4. The agents arrested the three individuals in possession of the footlocker and seized the footlocker. Id. An hour and a half after the arrests, the agents opened the footlocker without a warrant. Id. at 5. After holding that the Fourth Amendment applied to the footlocker, the Court addressed whether the warrantless search was permissible. Id. at 11-16. Reaching the search incident to arrest exception, the Court noted that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' or no exigency exists." Id. at 15 (quoting Preston v. United States, 376 U.S. 364, 367 (1964)). The Supreme Court further stated:

9

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

Id. Based on the federal agent's control of the footlocker, the Court held that the warrantless search violated the Fourth Amendment. Id. at 15-16.

We need not, however, analyze the facts of this case based on Chadwick, as the Supreme Court's decision in Gant applies to the instant case. Although Gant focused on the issue of searching automobiles, it held that once an arrestee has been secured, both justifications for the search incident to arrest exception—officer safety and preservation of evidence—are absent, as "there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search." Gant, 556 U.S. at 339, 343 (rejecting the Court's previous precedent in New York v. Belton, 453 U.S. 454 (1981), which interpreted Chimel to authorize "a vehicle search incident to every recent occupant's arrest," and holding that "the Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within distance of the passenger compartment at the time of the search."); accord Smallwood v. State, 113 So. 3d 724, 735 (Fla. 2013). Indeed, the Florida Supreme Court interpreted Gant to exactly do that:

10

> Gant demonstrates that while the search-incident-to-arrest warrant exception is still clearly valid, once an arrestee is physically separated from an item or thing, and thereby separated from any possible weapon or destructible evidence, the dual rationales for this search exception no longer apply.

Smallwood, 113 So. 3d at 735; see also Ancrum v. State, 146 So. 3d 1217 (Fla. 2d DCA 2014) (invalidating a search of a jacket from which the defendant had been separated by applying Gant and Smallwood in holding that the search of an item from which a defendant has been physically separated cannot be upheld as a search incident to the defendant's arrest); State v. K.S., 28 So. 3d 985 (Fla. 2d DCA 2010) (invalidating a search of a glovebox as incident to arrest where defendant had been secured and where arrest had been for fleeing and eluding).

The State argues that Brown v. State, 24 So. 3d 671 (Fla. 5th DCA 2009), which was decided after Gant, applies to the instant case. We find Brown distinguishable from the instant case. In Brown, the Fifth District Court of Appeal held that the search incident to arrest is valid "when the offense of arrest of an occupant of a vehicle is . . . for a crime that qmight yield physical evidence," and the "police may search the passenger compartment of the vehicle, including containers, to gather evidence, irrespective of whether the arrestee has access to the vehicle at the time of the search." Id. at 681. The court in Brown, however, explicitly distinguished the crime of theft, which the Brown defendant committed, from an arrest for traffic violations, which Harris committed in the instant case.

11

Specifically, the Fifth District concluded that "'[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.'" Id. at 677 (quoting Gant, 556 U.S. at 343).

Likewise, the only post-Gant, non-automobile Florida case that differs in result is easily distinguishable. In State v. Bultman, 164 So. 3d 144 (Fla. 2d DCA 2015), the police went to Bultman's house to search for a suspect in an unrelated case. Id. at 145. Although Bultman consented to the search, the police grew increasingly suspicious of her due to the smell of marijuana and the presence of methamphetamine on the premises. Id. The officers asked Bultman for identification, which she retrieved from her purse. Id.

> However, Bultman then attempted to hide her purse from the officers, and when they asked to search the purse, she refused. The officers repeatedly asked Bultman to place the purse on the hood of their police car for officer safety and twice had to remove it from her person. The officers arrested Bultman for resisting their commands to leave the purse on the hood of the car and conducted a search of her purse incident to arrest, wherein they found drugs and paraphernalia.

Id. Although upon arresting Bultman the officers had arguably reduced the purse to their control, it was the officers' concern about a weapon and Bultman's refusal to separate herself from the purse that led to the arrest in the first place. In contrast

to an arrest on an unrelated event and a search of the purse, Bultman's arrest was directly caused by her actions towards her purse.

Applying Smallwood, Gant, and Chadwick to the instant case, it is clear that the police officers had reduced Harris's backpack to their exclusive control and that Harris had no possibility of accessing the backpack. Having so secured the backpack, the police officers were not entitled to search the backpack without a warrant as a search incident to arrest.

3.    Automobile Search

In addition to clarifying the application of Chimel in the automobile context, Gant also explained that an exception unique to the automobile context and independent of Chimel existed. Gant, 556 U.S. at 343-44. Specifically, the Court held that, even when Chimel would not authorize a search incident to arrest of a vehicle, a search of the vehicle incident to the arrest will be upheld when "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Id. at 343 (quoting Thornton v. United States, 541 U.S. 615, 632 (2004)); accord Davis v. United States, 564 U.S. 229, 234-35 (2011).

Assuming a dirt bike qualifies as a vehicle for purposes of this exception, the facts are clear that Harris's backpack was not a part of the dirt bike nor stored on or in it. Instead, the backpack was worn by Harris, and after Harris and the dirt bike were separated, Officer Blanco separated Harris from his backpack. Accordingly,

13

Harris's backpack could not be searched as a part of the vehicle of the arrestee exception established in Gant.

B.    Consent to Search

Lastly, the State argues that this Court may affirm the trial court's denial of the motion to suppress based on the assertion that Harris consented to the search of the backpack.  While it is true that a warrant is not required to conduct a search if the individual validly consents to the search, Schneckloth v. Bustamante, 412 U.S. 218, 219 (1973), the State has the burden of proving by a preponderance of the evidence that the consent was freely and voluntarily given, and the issue of voluntary consent "is a question of fact based upon the totality of the circumstances." Wilson v. State, 952 So. 2d 564, 569 (Fla. 5th DCA 2007).

In the instant case, the trial court made no finding that Harris consented to the search, as it had already concluded that the search was a valid search incident to arrest.  The State, therefore, asks this Court to affirm based on the tipsy coachman doctrine.  This doctrine, however, is inapplicable "where a lower court has not made factual findings on an issue." See Bueno v. Workman, 20 So. 3d 993, 998 (Fla. 4th DCA 2009).  Accordingly, we cannot affirm the denial of the motion to suppress based on a factual question not reached below. See Powell v. State, 120 So. 3d 577, 590-91 (Fla. 1st DCA 2013), modified on reh'g.  On remand, the trial court may consider the question upon proper motion by the

14

parties. As this Court only addressed the search incident to arrest issue, either party may raise below other exceptions to the Fourth Amendment's warrant requirement.

III. CONCLUSION

Based on the foregoing, we find that the search of Harris's backpack was not a valid search incident to arrest and was not a valid search under Gant's automobile exception. Additionally, because the trial court made no factual findings regarding the issue of consent, it would be improper for us to consider this argument on appeal. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.