DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**CHRISTOPHER FREDERICKS,**
Appellee.

No. 4D19-2407

[April 8, 2020]

Appeal of nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Thomas J. Coleman, Judge; L.T. Case No. 18-7153 CF10A.

Ashley Moody, Attorney General, Tallahassee, and Lindsay A. Warner, Assistant Attorney General, West Palm Beach, for appellant.

Robert David Malove of The Law Office of Robert David Malove, P.A., for appellee.

GERBER, J.

This appeal, of a circuit court's order granting a motion to suppress, presents the novel issue of whether *Arizona v. Gant*, 556 U.S. 332 (2009), which proscribed certain limits on law enforcement's ability to search a vehicle after the driver is arrested, still permits a narcotics K-9's alert to serve as probable cause for the warrantless search of the vehicle.

More specifically, this case's facts presents the following question: After the police (1) lawfully investigate a driver who has voluntarily exited his vehicle, (2) lawfully arrest the driver for a narcotics-related offense, (3) lawfully move the arrested driver out of the vehicle's reach, and (4) timely deploy a narcotics K-9 which alerts to the vehicle to provide probable cause to search the vehicle, are the police still permitted to conduct a warrantless search of the vehicle in light of *Gant*?

We conclude, under those facts, the answer is yes. *Gant* appears to permit the warrantless search in this case because, regardless of the fact the driver was out of the vehicle's reach, the K-9 alert provided probable

cause to search the vehicle, that is, made it "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." *Id.* at 351. Moreover, *Gant* is consistent with longstanding United States Supreme Court precedent holding once probable cause exists that a vehicle contains contraband, the police may conduct a warrantless search of the vehicle. Thus, we reverse the circuit court's order granting the motion to suppress.

We present this opinion in three sections:

1. The stop, search, and charges;
2. The driver's motion to suppress; and
3. Our review.

### 1. *The Stop, Search, and Charges*

The material facts of the stop, search, and charges are undisputed.

A road patrol officer ran a license plate check on a car driving in a neighborhood. While the officer waited for the computer to respond, the car turned into a parking space. The computer revealed the registered owner's license was suspended. The officer pulled his vehicle directly behind the car just as the driver was exiting the car. The officer saw the driver matched the registered owner's driver's license photograph.

The officer exited his vehicle and called for a narcotics K-9 handler to respond. The officer would later testify this particular neighborhood was inundated with methamphetamine, and the driver's body language indicated he may have been under the influence.

The K-9 handler was down the street on another call and readily available. Within four to five minutes, while the officer and driver discussed the suspended license, the K-9 handler arrived. The K-9 handler deployed the K-9 around the driver. The K-9 alerted to a narcotics odor coming from the driver. The officer searched the driver and found two small bags each containing one gram of crystal methamphetamine.

The officer handcuffed the driver and put him in the officer's vehicle. The driver did not consent to a search of his car.

Nevertheless, the K-9 handler walked around the car with the K-9. The K-9 alerted to a narcotics odor coming from the car's driver's side door. The K-9 handler opened the door and deployed the K-9 inside. The K-9 alerted to the center console area. The K-9 handler saw a plastic chewing gum container in the cupholder. He opened it and found fifteen grams of

methamphetamine. He then opened the center console and found another fifteen grams of methamphetamine, three grams of cannabis, and two glass pipes, one with methamphetamine residue and the other with marijuana residue. He next looked in the driver's door pocket and found a digital scale and plastic bags typically used for packaging drugs. He lastly looked at the rear floorboard and found a tin with sixteen grams of marijuana and a loaded handgun.

After the officer read the driver his *Miranda* rights, the driver admitted he knew of the illegal drugs in his car, and knew he was a convicted felon who could not possess a firearm.

The state charged the driver with five counts: (1) trafficking in methamphetamine based on his possession of more than fourteen but less than twenty-eight grams; (2) possession of a firearm and ammunition by a convicted felon; (3) possession of cannabis less than twenty grams; (4) possession of drug paraphernalia; and (5) driving while license suspended.

## 2. *The Driver's Motion to Suppress*

The driver filed a motion to suppress, arguing that once he was handcuffed and away from his car, the officers were required to obtain a warrant to search his car. According to the driver, the officers' warrantless vehicle search incident to his arrest violated his Fourth Amendment right to be protected against unreasonable searches and seizures, requiring suppression of the drugs, paraphernalia, and firearm found in his car. In support, the driver relied on, among other cases, *Arizona v. Gant*, 556 U.S. 332 (2009), *Harris v. State*, 238 So. 3d 396 (Fla. 3d DCA 2018), and *State v. K.S.*, 28 So. 3d 985 (Fla. 2d DCA 2010) (discussed in the next section).

The state responded that the cases upon which the driver relied were distinguishable because none of those cases, unlike this case, involved a deployed K-9. Instead, the state relied on pre-*Gant* and post-*Gant* cases to argue that a K-9's alert to a drug's presence within an automobile constitutes probable cause for a warrantless search under the Fourth Amendment's "automobile exception."

The circuit court granted the defendant's motion to suppress. The circuit court initially recognized that once the K-9 alerted to the car, the officers had probable cause to search the car. However, the circuit court ultimately concluded, under *Gant*, that the officers could not have conducted a warrantless search of the car, unless the driver could have reached into the car when the car was being searched, and it was undisputed the driver here could not do so.

### 3. *Our Review*

This appeal followed. The state argues the K-9's alert gave the officers probable cause to conduct a warrantless search of the driver's car under the automobile exception. According to the state, cases like *Gant* addressing a warrantless search of a vehicle, where the arrestee is out of the vehicle's reach, are irrelevant here, because none of those cases involved a K-9 alert providing probable cause to conduct the warrantless search of the vehicle. The driver, however, argues *Gant* controls in any situation where the arrestee is out of the vehicle's reach.

"The standard of review for motions to suppress is that the appellate court affords a presumption of correctness to a trial court's findings of fact but reviews de novo the mixed questions of law and fact . . . ." *Pasha v. State*, 225 So. 3d 688, 703 (Fla. 2017).

Employing our mixed standard of review, we conclude the circuit court erred in granting the driver's motion to suppress. Our reasoning lies somewhere between the state's and the driver's respective arguments.

That is, *Gant* applies here, but in the state's favor, because regardless of the fact the driver was out of the vehicle's reach, the K-9 alert made it "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." 556 U.S. at 351. Moreover, *Gant* is consistent with longstanding United States Supreme Court precedent holding once probable cause exists that a vehicle contains contraband, the police may conduct a warrantless search of the vehicle. We address each basis in turn.

### a. **Gant *applies here, but in the state's favor, because regardless of the fact the driver was out of the vehicle's reach, the K-9 alert made it reasonable to believe the vehicle contained evidence of the offense of arrest.***

In *Gant*, the police arrested the defendant for driving with a suspended license. *Id.* at 336. The police handcuffed the defendant and secured him in a patrol car. *Id.* The police then searched the defendant's vehicle incident to the arrest, and found a jacket with a bag of cocaine in the pocket. *Id.*

The defendant was charged with two drug offenses. *Id.* He moved to suppress the evidence found in his vehicle. *Id.* He argued the warrantless search of his vehicle violated the Fourth Amendment because he posed no threat to the officers after he was handcuffed in the patrol car and because

he was arrested for a traffic offense for which no evidence could be found in his vehicle. *Id.*

The trial court denied his motion, apparently based on *New York v. Belton*, 453 U.S. 454 (1981), which was understood at the time to hold the police may search a vehicle's interior areas incident to an occupant's arrest. 556 U.S. at 337.

The state supreme court reversed, concluding that although *Belton* addressed a search incident to arrest, *Belton* did not address whether the police may search a defendant's vehicle as an incident to arrest once the police have secured the defendant in a patrol car. *Id.* The state supreme court instead relied on the earlier case of *Chimel v. California*, 395 U.S. 752 (1969), which requires a search incident to arrest be justified by either officer safety or preserving evidence. 556 U.S. at 337. According to the state supreme court, because neither of those interests existed once the police secured the defendant in the patrol car, the search of his vehicle was unreasonable. *Id.* at 337-38.

The United States Supreme Court affirmed the state supreme court's decision. *Id.* at 351. The Court first concluded the police are authorized to search a vehicle incident to arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. The Court then also concluded:

> [C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest *when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.* In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others . . . *the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.*

*Id.* at 343-44 (emphasis added; internal citations and quotation marks omitted). The Court later summarized its two conclusions as follows:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of arrest.* When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless

5

police obtain a warrant or show that another exception to the warrant requirement applies.

*Id.* at 351 (emphasis added).

*Gant*'s two conclusions apply here, but one of those conclusions leads us to reverse the circuit court's order granting the motion to suppress in this case.

As in *Gant*, the driver here was not within reaching distance of his vehicle's passenger compartment at the time of the search because he was secured in a patrol car. Under that ground, the officers' warrantless search would appear to have been unreasonable

However, unlike *Gant*, the officers here reasonably believed the driver's vehicle contained evidence of the offense of arrest, i.e., methamphetamine and/or other illegal narcotics. The narcotics K-9 first alerted to the driver's shirt pocket which contained methamphetamine. Then the narcotics K-9 alerted to not only the driver's side door, but also to the center console. The K-9 handler found methamphetamine, marijuana, and drug paraphernalia in those areas.

Thus, because the driver here was arrested outside of his vehicle for a narcotics offense, and because the K-9 alerted to more narcotics in the driver's vehicle, the officers reasonably believed more narcotics evidence relevant to the crime of arrest might be found in the vehicle, per *Gant*. As a result, the K-9 handler's warrantless search of the vehicle did not violate the Fourth Amendment.

The other cases upon which the driver has relied are distinguishable because, in those cases, like *Gant*, the police had no reason to believe the driver's vehicle contained evidence of the offense of arrest. *See, e.g., Harris v. State*, 238 So. 3d 396 (Fla. 3d DCA 2018) (after the police arrested the defendant for *reckless driving* on a dirt bike, removed his backpack, handcuffed him, and had him sit on the grass five feet away, the police's search of the defendant's backpack, leading to the discovery of illegal drugs, did not fall under *Gant*'s warrantless search exceptions); *State v. K.S.*, 28 So. 3d 985 (Fla. 2d DCA 2010) (after the police ordered the defendant away from his car, arrested him for *fleeing and eluding*, handcuffed him, and found no weapons on him, the police's search of the car's glove box, leading to the discovery of a firearm, did not fall under *Gant*'s warrantless search exceptions, because the juvenile was not within reaching distance of his car, and the police could not reasonably have believed they would find evidence of fleeing and eluding in the glove box).

6

***b.* Gant *is consistent with longstanding United States Supreme Court precedent holding once probable cause exists that a vehicle contains contraband, the police may conduct a warrantless search of the vehicle.***

The state has relied on post-*Gant* and pre-*Gant* cases for the proposition that once a K-9 alerts to a drug's presence within an automobile, the alert constitutes probable cause for a warrantless search under the Fourth Amendment, thus making the defendant's reliance on *Gant* "misplaced," according to the state. *See, e.g., Campbell v. State*, 139 So. 3d 490, 497-98 (Fla. 2d DCA 2014) (counsel's failure to file motion to suppress search results of defendant's vehicle was not deficient performance where K-9 alerted on defendant's vehicle, which provided police officers with probable cause to search); *Bennett v. State*, 111 So. 3d 983, 986 (Fla. 1st DCA 2013) (K-9's "sniff was up to snuff," and thus trial court did not err in denying motion to suppress based on its determination that police had probable cause to search a vehicle's trunk); *State v. Hill*, 770 So. 2d 280, 282 (Fla. 5th DCA 2000) ("[T]he canine alert gave probable cause to search the automobile irrespective of its ownership or the proximity of the owner."); *State v. Robinson*, 756 So. 2d 249, 250-51 (Fla. 5th DCA 2000) (once the defendant was legally stopped, the use of a drug-sniffing K-9 was not an unconstitutional search, because a properly trained K-9's alert provides probable cause for a search, and the officer's detention of the driver did not last any longer than reasonably necessary for the officer to write the citation and make the customary license, tag, insurance and registration checks).

However, the state's reliance on the foregoing K-9 cases lacks any reconciliation with *Gant*'s initial conclusion that "[p]olice may search a vehicle incident to a recent occupant's arrest *only if the arrestee is within reaching distance of the passenger compartment at the time of the search.*" 556 U.S. at 351 (emphasis added).  To merely rely on the foregoing K-9 cases, and then simply say the defendant's reliance on *Gant* is "misplaced" in cases like the instant case, where the driver was not within reaching distance of his vehicle at the time of the search, is too narrow and too convenient of a solution.

Instead, we reconcile *Gant* with this line of cases.  That is, we conclude *Gant* is consistent not only with the cases holding that a K-9's alert constitutes probable cause for a warrantless search, but also is consistent with the United States Supreme Court's longstanding "automobile exception" to the Fourth Amendment's warrant requirement.

For nearly a century, the United States Supreme Court has held once probable cause exists that a vehicle contains contraband, the police may conduct a warrantless search of the vehicle, under what has become known as the "automobile exception" to the Fourth Amendment's warrant requirement. *See, e.g., Carroll v. United States*, 267 U.S. 132, 153 (1925) (after law enforcement officers had probable cause to believe a car they observed on the road contained illegal liquor, their warrantless stop and search of the car was proper because a "necessary difference" exists between searching "a store, dwelling house or other structure" and searching "a ship, motor boat, wagon, or automobile," because a "vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought"); *United States v. Ross*, 456 U.S. 798, 823-24 (1982) (police who had lawfully stopped a vehicle, and had probable cause to believe contraband was concealed within it, could conduct a warrantless search of the vehicle, because the scope of a warrantless search of a vehicle is not defined by the nature of container in which the contraband is secreted, but rather by the object of the search and the places in which probable cause suggests the object may be found); *California v. Carney*, 471 U.S. 386, 394 (1985) (after DEA agents had probable cause to believe the defendant was distributing a controlled substance from a motor home, notwithstanding its possible use as a dwelling place, their warrantless search of the motor home was not unreasonable); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more";  where the police had seen one defendant put drugs in the trunk of the car and had seen another defendant act in ways suggesting he had drugs in his truck, the police's warrantless searches of the vehicles did not violate the Fourth Amendment).

Thus, *Gant*'s conclusion that a search is justified "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," 556 U.S. at 343 (citation omitted), is entirely consistent with the reliance on probable cause to justify the warrantless search of a vehicle, whether that probable cause arises from a K-9's alert to a vehicle or from any other source.  In fact, the Court in *Gant* supported its conclusion by citing the automobile exception's reliance on the probable cause standard. *See Gant,* 556 U.S. at 346-47 ("Other established exceptions to the warrant requirement authorize a vehicle search . . . when . . . evidentiary concerns demand.  For instance . . . [i]f there is probable cause to believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search of any area of the vehicle in which the evidence might be found.") (citing *Ross*, 456 U.S. at 820–21).

### *Conclusion*

*Gant* appears to permit the warrantless search in this case because, regardless of the fact the driver was out of the vehicle's reach, the K-9 alert provided probable cause to search the vehicle, that is, made it "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest." *Id.* at 351. Moreover, *Gant*'s foregoing holding is consistent with longstanding United States Supreme Court precedent holding once probable cause exists that a vehicle contains contraband, the police may conduct a warrantless search of the vehicle.

Based on the foregoing, we reverse the circuit court's order granting the defendant's motion to suppress. We remand to the circuit court to enter an order denying the defendant's motion to suppress, and for further proceedings.

*Reversed and remanded for further proceedings.*

GROSS and DAMOORGIAN, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

9